## NATIONAL LABOR RELATIONS BOARD
### v. ALSIDE, Inc.
### No. 11237.

United States Court of Appeals
Sixth Circuit.
Nov. 26, 1951.

Philip Fusco, Cleveland, Ohio (George J. Bott, David P. Findling, A. Norman Somers, Fannie M. Boyls, and Melvin Pollack, all of Washington, D. C., on the brief), for petitioner.

Stanley Denlinger, Akron, Ohio (Stanley Denlinger, Louis L. Manes, Akron, Ohio, on the brief), for respondent.

Before HICKS, Chief Judge, and SIMONS and MILLER, Circuit Judges.

HICKS, Chief Judge.

Petition of the National Labor Relations Board to enforce its order of February 3, 1950, that the respondent, Alside, Inc., cease and desist from (1) (a) discouraging membership in United Steel Workers of America, C. I. O., or any other labor organization of its employees by discriminating in re-

gard to the hire and tenure of employment, etc., and (b) in any other manner interfering with, restraining or coercing its employees in the exercise of the right to self-organization, to form labor organizations, to join or assist United Steel Workers of America, C. I. O., or any other labor organization, to bargain collectively through representatives of their own choosing, etc., as authorized, in Sec. 8(a) (3) of the National Labor Relations Act, 29 U.S.C.A. § 158(a) (3), as amended by Sec. 7, 29 U.S.C.A. § 157, thereof; (2) to take affirmative action, etc.

Respondent is an Ohio corporation engaged in the manufacture, sale and distribution of aluminum siding and related products, with its principal place of business at Akron. It is engaged in interstate commerce within the meaning of the National Labor Relations Act. United Steel Workers of America, C. I. O., is a national labor organization and its Local Union No. 4154, was organized on September 15, 1948. About thirty of respondent's employees joined the Local and Lawrence E. Worley, Jr., was elected President. During the next two days all of respondent's plant workers were laid off or discharged.

At the outset we are confronted with the question, whether the Board had jurisdiction to issue the complaint upon which its order was made. Sec. 9(h) of the National Labor Relations Act, as amended by the Labor Management Relations Act, 29 U.S. C.A. § 159(h), provides as follows: "No investigation shall be made by the Board * * *, no petition under subsection (e) (1) of this section shall be entertained, and no complaint shall be issued pursuant to a charge made by a labor organization under subsection (b) of section 160 of this title, unless there is on file with the Board an affidavit executed * * * by each officer of such labor organization and the officers of any *national or international labor organization* of which it is an affiliate or constituent unit that he is not a member of the Communist Party [etc.]"

▉ This statute makes it clear that the Board was without jurisdiction to issue the complaint if it was made by a labor organization under subsec. (b) of Sec. 160 of the National Labor Relations Act, as amended, 29 U.S.C.A. § 160(b), unless there was on file with the Board the non-communist affidavits required by Sec. 9(h) above quoted. No such affidavits were filed but petitioner contends that none were required because the charges, both original and amended, were filed by an individual, and on the face of the record this is true, for these charges were signed and filed by "Lawrence E. Worley, Jr., an individual." However, respondent contended before the Board and here that in filing the charges Worley was not acting as an individual but as a "front" or agent of the Union [see Sec. 2(5) of the Labor Management Relations Act, 29 U.S.C.A. § 152(5)] and that the charges thus filed by him were fraudulent in law. This raises a question of jurisdiction and we must entertain it.

▉ It is true that employees acting individually may assert their rights before the Board without the restrictions of Sec. 9(h). N. L. R. B. v. Augusta Chemical Co., 5 Cir., 187 F.2d 63; N. L. R. B. v. Clausen, 3 Cir., 188 F.2d 439, 443. But the case here goes beyond this. The charges filed by Worley are not limited to his individual grievances. They are in substance that "on or about September 17, 1948, it," (respondent) "by its officers, agents and representatives, terminated the employment of the persons listed on attached sheet, because of their membership and activities in behalf of United Steel Workers of America, C. I. O., *a labor organization* * * *" [italics ours] and with the charges, original and amended, are listed the names of the thirty and thirty-one Union employees, respectively. These lists include Worley's name. This quoted excerpt indicates for whom he was sponsor, even though he designated himself "as an individual." The bases of the charges were exactly the same as they would have been if they had been made by the Union and signed by Worley as its President. The purpose was to inform the Board that "by the act set forth in the paragraph above and by other acts and conduct it" (respondent) "has interfered with, restrained and coerced and is interfering

with, restraining and coercing its employees in the exercise of their rights granted in Sec. 7 of the said Act."

When the question of representation was raised before the Examiner the Board's counsel took the position that in filing the charges Worley was acting not only for himself but for all the other Union men. The Examiner accepted this view and thereupon counsel for respondent moved to dismiss, for the reason that the complaint had been issued contrary to Sec. 9(h) of the Act, that for all practical purposes "Union men" meant the organization. The Examiner denied the motion and his action was sustained by the Board.

Thus, is presented a question of fact which, if unsupported by substantial evidence on the record *considered as a whole,* is inconclusive. The relationship of Worley to the Union may be determined by circumstances just like other facts may be determined. He became a member of the Local Union on September 9, 1948. He immediately identified himself with Union activities and on September 15th he was elected President of Local 4154. Steel Workers' International representatives Lee, Katchur and Kendrick were at this meeting. On the next morning, Worley, Wolonski, Stemple and Forward, all local officers of the Union, accompanied the International representatives to President Kaufman's office. Kaufman conferred with the International representatives but declined to meet with Worley, Wolonski, Stemple and Forward upon the ground that they were no longer employees. At this conference the representatives sought to procure recognition of the Union. They failed and the employees were discharged.

On the afternoon of the same day, Worley presided over a meeting of the Local, at which a picket line was established on a twenty-four hour daily schedule and he as President supervised the activities of the pickets until they were discontinued some time in October. On the same day that Worley filed his original charge, Katchur, one of the International representatives of the Union, at Worley's request wrote to Kaufman and requested respondent to recognize the Union as the sole and exclusive bargaining agent for all production and maintenance employees. The letter set out the names of twenty-eight employees who had been locked out or discharged and among these was the name of Worley.

■ Considering the question as a whole, it stretches credulity to the breaking point to believe that Worley did not on October 20, 1948, file the charges as a representative of the Union, when, before, after and even on that day, he was its chief, active protagonist. His signature, followed by the descriptive words, "an individual," does not destroy the evidential facts, most of which Worley himself admits. Our conclusion is that when Worley filed the charges he was acting as a "front" or "agency" of the Union. We think that the record as a whole does not support the Board's conclusion. We believe the contrary.

■ This leaves the question whether the Board had jurisdiction to entertain the complaint against respondent issued December 3, 1948, by its General Counsel, that respondent had engaged and was engaging in unfair labor practices. The non-communist affidavits, the importance of which has been stressed [American Communications Ass'n v. Douds, 339 U.S. 382, 383, 407, 70 S.Ct. 674, 94 L.Ed. 925] were not filed and the statute makes it clear that in such case no complaint shall be issued pursuant to a charge made by a labor organization.

■ The Board insists that it was within its discretion to accept the charges, and proceeding upon the complaint, to issue its cease and desist order, which we should enforce. We cannot agree. We are dealing with a question of jurisdiction upon proven facts and this is a question of law. The Supreme Court in N. L. R. B. v. Highland Park Mfg. Co., 341 U.S. 322, 71 S.Ct. 758, 760, 95 L.Ed. 969, 977, has answered this question, to wit: "It would be strange indeed if the courts were compelled to enforce without inquiry an order which could only result from proceedings that, under the admitted facts, the Board was forbidden to conduct. The Board is a statutory agency, and, when it is forbidden to investigate or entertain complaints in certain

circumstances, its final order could hardly be valid. We think the contention is without merit and that an issue of law of this kind, which goes to the heart of the validity of the proceedings on which the order is based, is open to inquiry by the courts when they are asked to lend their enforcement powers to an administrative tribunal."

Enforcement denied.