**SOUTHERN FURNITURE MFG. CO. v. NATIONAL LABOR RELATIONS BOARD.**

**No. 13444.**

United States Court of Appeals Fifth Circuit.

Jan. 31, 1952.

Rehearing Denied March 4, 1952.

C. M. A. Rogers, Mobile, Ala. for petitioner.

Owsley Vose, A. Norman Somers, Asst. Gen. Counsel, and David P. Findling, Assoc. Gen. Counsel, National Labor Relations Bd., all of Washington, D. C., for respondent.

Before HOLMES, STRUM and RIVES, Circuit Judges.

RIVES, Circuit Judge.

This case is before the court upon petition to review and set aside an order of the National Labor Relations Board (91 N. L. R. B. No. 189) and upon the Board's request for enforcement of its order.

The questions presented are: (1) whether the Board erred in denying the Company's motion to strike from the complaint the names of all employees alleged to have been discriminatorily discharged other than Ezeakiel Caldwell, who signed the charge; (2) whether the Board properly found from the evidence that the Company interfered with, restrained, and coerced its employees in violation of Section 8(a) (1) of the National Labor Relations Act, 29 U.S.C.A. § 158(a) (1) and discriminatorily discharged 17 employees in violation of Section 8(a) (3) and (1) of the Act; and (3) whether the Company's application to adduce additional evidence should be granted or denied.

The amended charge upon which the present complaint was predicated alleges the discriminatory discharge of 33 named employees, and was signed only by Ezeakiel Caldwell, one of the discharged employees. The Company contends that Caldwell was not authorized to file charges on behalf of the other employees similarly discharged, and consequently that the names of all dischargees other than himself should have been stricken from the complaint. This

argument is without merit. The charge merely sets in motion the machinery of an inquiry. There is no requirement that it be filed by a labor organization, by the discharged employee, or even by any employee. Strangers to the labor contract are permitted to make the charge. See N. L. R. B. v. Indiana & Michigan Electric Co., 318 U.S. 9, 17–18, 63 S.Ct. 394, 87 L.Ed. 579; Amalgamated Utility Workers v. Consolidated Edison Co., 309 U.S. 261, 265, 60 S. Ct. 561, 84 L.Ed. 738.

The Company further argues that the court should not sanction the filing of a charge by an individual where, as here, it is claimed that a union is in a position to benefit therefrom, for to do so is to enable a union which has not complied with the requirements of Section 9(f), (g), and (h) of the Act, 29 U.S.C.A. § 159 (f–h) (the financial reporting and non-communist affidavit provision) to circumvent these provisions of the statute. The Company strongly relies on the recent decision of the Sixth Circuit in N. L. R. B. v. Alside, Inc., 192 F.2d 678. In that case the charges were filed by the President of the Union and its "chief, active protagonist". He had approached the employer seeking recognition of the Union before the discrimination and on the very day he filed the charges he wrote to the Company renewing the request for recognition. The court concluded that on this "question of fact" the Board's conclusion that in filing the charges the Union President was acting in his individual capacity was not supported by substantial evidence. The court cited this court's decision in N. L. R. B. v. Augusta Chemical Company, 187 F.2d 63, and the Third Circuit's decision in N. L. R. B. v. Clausen, 188 F.2d 439, 443, and stated that "employees acting individually may assert their rights before the Board without restriction of section 9(h)". Here, Caldwell filed the charges on behalf of himself individually as well as the other similarly discharged employees, including his sister, daughter, daughter-in-law, and a number of others. The only contact which Caldwell and the other employees had had with the union prior to their discharge was the signing of application cards on or about the day of their discharge. There was no substantial evidence that in filing the charges Caldwell was actually "fronting" for the union. Cf. N. L. R. B. v. Alside, Inc., supra. Under such circumstances the Board properly denied the Company's motion to strike from the complaint the names of all dischargees other than Ezeakiel Caldwell.

The Company started its furniture manufacturing operation in Navco, Mobile County, Alabama in July, 1949. The number of its employees had increased to 113 by the week ending October 8th, 1949, and at the time of the hearing in March, 1950, to 200 or 210.

A representative of United Construction Workers, Fred Deloach, visited the Company's plant on October 3rd, and talked with two or three employees with regard to union organization. The following day he talked to other employees at the Company commissary, and was told that while there was interest in the formation of a union, it was inadvisable for him to solicit union membership in the vicinity of the plant. On October 5th, Deloach became acquainted with Ernest Hines, who had worked for the Company until early October and operated his own bus transporting various employees back and forth from the Company plant. Deloach arranged with Hines to stop his bus as he was driving the employees home from work the next day, October 6th, at a point about 2 to 2½ miles from the Company plant, in order that he might further discuss the subject of forming a union with them. Deloach boarded the Hines bus as agreed and when the employees thereon displayed interest in unionization, union application cards were passed around with the suggestion that they be taken home, signed, and returned to Hines the next morning. On the following morning, October 7th, Deloach picked up from Hines about 19 signed cards which were turned in by employees who had ridden the bus the day before. That same day three of the Company's foremen, Bradshaw, Thomas, and Sledge, interrogated various employees as to whether they had ridden the Hines bus and signed a union application card. Several of them who denied signing the cards were accused of lying, and the

clock numbers of the employees interrogated were marked down. There is testimony that the charging party, Ezeakiel Caldwell, was questioned at length by Foreman Bradshaw and when, after repeated inquiries, Caldwell denied having signed a union application card, Bradshaw warned, "Well, somebody is messing with the labor around here and if I finds out who it is, it won't be so good for them."

The afternoon of October 7th, following the interrogation of its employees, the Company discharged 17 of them. 15 of the 17 employees discharged were paid and "laid off" shortly after 4 p.m. while the remaining two discharged employees were notified of their discharge when they entered the plant the following work day, Monday, October 10th. All of the employees discharged except Ezeakiel Caldwell and Lillian Warmack had ridden the Hines bus on October 6th.[1]

At the time of their discharge most of the employees were told that they were being laid off for a week or two and that they would be sent for when needed. Although the number of employees was gradually increased to almost double the October 8th level, through the hiring of as many as 30 additional employees a week, the discharged employees were not reinstated. Only one of the 17 discharged employees had ever been criticized for unsatisfactory work and none had been forewarned. Under such circumstances, we think the Company's contention that these employees were discharged not for union activity but only in furtherance of Company policy gradually to weed out inefficient employees was properly rejected by the Trial Examiner and the Board.[2] Cf. N. L. R. B. v. Tex-O-Kan Flour Mills Co., 5 Cir., 122 F.2d 433, 439–440; N. L. R. B. v. Robbins Tire & Rubber Co., 5 Cir., 161 F.2d 798, 801; N.

L. R. B. v. El Paso Ysleta Bus Co., 5 Cir., 190 F.2d 261, 262. We conclude there is ample evidence to support the Board's determination that the Company interfered with, restrained, and coerced its employees in violation of Section 8(a) (1) of the Act, and that it discriminatorily discharged 17 of its employees in violation of Section 8(a) (3) and (1) of the Act. H. J. Heinz Co. v. N. L. R. B., 311 U.S. 514, 518, 520, 61 S.Ct. 320, 85 L.Ed. 309; N. L. R. B. v. Alco Feed Mills, 5 Cir., 133 F.2d 419, 420–421; Sewell Hats, Inc. v. N. L. R. B., 5 Cir., 143 F.2d 450, 451–452; Olin Industries, Inc., v. N. L. R. B., 5 Cir., 191 F.2d 613.

The Company for the first time in its petition for review requests that this court take cognizance of an affidavit attached to its petition and that it be permitted to adduce additional evidence of the testimony of John Proudfoot, its Manager, to the effect that he had no knowledge of union efforts to organize the Company employees, that the employees were discharged for reasons set forth in his previous testimony, that as far as he knows the discharged employees had not applied for union membership prior to their discharge, that if he had been approached beforehand relative to union organization he would have agreed to the holding of an election, and that subsequent to the hearing and the issuance of the Intermediate Report in these proceedings he was approached by the Union and entered into a stipulation for the holding of an election, but that approximately one hour later some of the Company's employees, together with employees of another company, went on strike during the course of which numerous acts of violence were committed and a Company hotel was burned, causing the death of one of the employees.

Section 10(e) of the Act, 29 U.S.C.A. § 160(e), provides that a party seeking leave

---

1. It was shown that Ezeakiel and Lillian normally came to work together with Annie Lee Caldwell in Ezeakiel's truck. Lillian was the sister of Ezeakiel, who in turn was the father of Annie Lee and the father-in-law of Delores Caldwell, both of whom had admitted to foreman Thomas that they had ridden the bus on October 6th.

2. It should again be noted that practically all of the employees suddenly discharged on October 7th for alleged inefficiency had ridden the Hines bus, received and signed union application cards the day before. See Peoples Motor Express Inc., v. N. L. R. B., 4 Cir., 165 F.2d 903, 905.

to adduce additional evidence must "show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for the failure to adduce such evidence in the hearing before the Board * * *". With the exception of testimony touching subsequent events all of the testimony now sought to be adduced was available and could have been presented at the time of the hearing, and no convincing reason for its non-production has been advanced. The witness whose further testimony petitioner here seeks to adduce actually testified at length for petitioner at the hearing.

 The events of September, 1950, including the alleged acts of violence, occurred prior to the issuance of the Board's decision and order on October 23, 1950. The company made no attempt to have the Board reopen the record for the purpose of adducing the desired additional evidence concerning these subsequent events. The Company's reliance on N. L. R. B. v. Indiana & Michigan Electric Co., 318 U.S. 9, 63 S.Ct. 394, 87 L.Ed. 579, is misplaced, for that case is readily distinguishable under its own facts and is not controlling on its merits in favor of the Company here. In that case the additional evidence sought to be adduced had relevance to the issues involved and the Company had previously sought to introduce such evidence before the Board. The charge involved was company domination of the union, and the additional evidence related to concurrent unlawful activities on the part of the union's principal witnesses who were subsequently convicted of violence after testifying against the Company in the case. It affected not only their credibility at the time they testified but the good faith of other employees and the union as well. Here, the fact that the Company, in September of 1950, may have entered into an agreement with the union for a consent election and that thereafter certain unnamed employees went on strike and may have engaged in unlawful activity would not affect the Board's finding that the Company had a year before unlawfully interfered with and

discriminatorily discharged certain of its employees. The subsequent events alleged are not material to the issues involved in this proceeding. The Company's application to adduce additional evidence is therefore denied. Cf. N. L. R. B. v. Vincennes Steel Corp., 7 Cir., 117 F.2d 169, 173.

We conclude that the Board's findings are supported by substantial evidence on the record considered as a whole,[3] and the order of the Board is therefore enforced.

---

3. Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456.