## NATIONAL LABOR RELATIONS BOARD
### v. HAPP BROS. CO., Inc.
#### No. 13756.

United States Court of Appeals
Fifth Circuit.

April 15, 1952.

Norton J. Come, Attorney, N.L.R.B., A. Norman Somers, Asst. Gen. Cnsl. N.L.R.B., and David P. Findling, Assoc. Gen. Cnsl. N.L.R.B., all of Washington, D. C., for petitioner.

Cubbedge Snow, Macon, Ga., Frank A. Constangy, Atlanta, Ga., for respondent.

Before HOLMES, BORAH, and STRUM, Circuit Judges.

BORAH, Circuit Judge.

This is a conventional proceeding under Section 10(e) of the National Labor Relations Act, as amended, 29 U.S.C.A. § 160 (e), in which the National Labor Relations Board seeks enforcement of its order of July 28, 1950, against the respondent, Happ Brothers Company, Inc. The order sought to be enforced required respondent to cease and desist from engaging in the specific forms of conduct found to have violated the Act, and from in any other manner infringing upon the employee's rights to self-organization and collective bargaining.

Affirmatively, the order directed respondent to offer immediate and full reinstatement to certain named employees and to make them whole for any loss of pay suffered by reason of respondent's discrimination against them; to withdraw and withhold all recognition from the Shop Committee as the representative of any of its employees, and to post appropriate notices.

The respondent is a Georgia Corporation with its principal office and place of business in Macon, Georgia, where it is engaged in the manufacture, sale and distribution of trousers and jackets. Local 223 of the United Construction Workers, an affiliate of the United Mine Workers of America, is the union here involved. This organization, according to the findings of the Board, was organized under the circumstances hereinafter next set forth.

In February, 1946, the respondent entered into a collective bargaining contract with the United Garment Workers Union, A. F. L. In October, 1947, a month prior to the expiration date of this contract, respondent advised the Union and the employees that it was not going to renew the contract since it was its belief that the Union no longer represented a majority of the employees and because the Union had turned the factory into two armed camps. Thereafter the employees elected a company supported shop committee to deal with management. Upon the lapse of the Garment Workers contract the Amalgamated Clothing Workers, C. I. O., entered upon the scene and sought unsuccessfully to organize respondent's employees. This campaign was discontinued in January, 1948. In the meantime, the Garment Workers had petitioned the Board for an election to determine a bargaining representative and the Amalgamated Clothing Workers intervened in this election. In January, 1948, the United Construction Workers, responding to the invitation of Imogene Crawford, president of the prior incumbent Garment Workers, came in to organize the employees. Imogene Crawford circulated a petition to decertify the Garment Workers Union and thereafter this Union withdrew its petition for an election. During the latter part of January,

1948, the Construction Workers held a meeting at which a number of the employees signed union cards. The Union thereafter intensified its organizational campaign and on February 12, its Regional Director informed respondent that a majority of the employees had joined the Construction Workers and requested a conference. The respondent refused to meet, stating that, "we are confident that our employees do not desire any outside representation." On February 20, 1948, respondent discharged three employees for the assigned reason that they were deficient in their production. The employees reported their discharges to the Union, a meeting was called, and the members voted to go on strike. On February 23, 1948, the strike began with approximately 150 employees participating.

We are met at the outset with a serious jurisdictional question and this question we must decide. Respondent contends that the Board was without jurisdiction to issue the complaint on which this proceeding is based for the reason that in reality the charge was made by a labor organization which had not complied with section 9(h) of the National Labor Relations Act, as amended by the Labor Management Relations Act, 61 Stat. 146, 29 U.S.C.A. § 159(h), in that Local 223, United Construction Workers, was affiliated with the United Mine Workers of America and none of its officers had executed the non-Communist affidavits required by the statute. More specifically, respondent contends that although the charge and amended charges purport to have been filed by Imogene Crawford acting as an individual employee, in reality she was acting as "a front" or agent for the union; and that the jurisdictional requirements of the Act may not be defeated by the obvious subterfuge of having the president of the union designate herself "an individual" instead of "president."

The Board, on the other hand, contends that it did not err in denying respondent's motion to dismiss and points out that the charges were signed and filed by "Imogene Crawford (individual)," and that the charge alleged discrimination against the charging party. Under these circumstanc-

es it is argued that the further question of whether she was also fronting for the union is irrevelant, insignificant, and too academic to consider. We do not agree.

The statute provides that, "No investigation shall be made by the Board * * *, no petition under subsection (e)(1) of this section shall be entertained, and no complaint shall be issued pursuant to a charge made by a labor organization under subsection (b) of section 160 of this title, unless there is on file with the Board an affidavit executed * * * by each officer of such labor organization and the officers of any national or international labor organization of which it is an affiliate or constituent unit that he is not a member of the Communist Party. [etc.]."

■ It was conceded by the Board that Local 223, United Construction Workers, was affiliated with the United Mine Workers of America, none of the officers of which had executed the non-Communist affidavits required by the statute. It must also be conceded that the Congressional purpose in enacting these provisions was to further its policy of wholly eradicating and barring from leadership in the American labor movement, at each and every level, adherents to the Communist party and believers in the unconstitutional overthrow of our Government. N. L. R. B. v. Highland Park Co., 341 U.S. 322, 325, 71 S.Ct. 758, 95 L.Ed. 969; N. L. R. B. v. Postex Cotton Mills, 5 Cir., 181 F.2d 919, 920; N. L. R. B. v. Highland Park Co., 4 Cir., 184 F.2d 98, 101. Surely this great purpose may not be rendered nugatory and destroyed by subterfuge or resorting to the simple expedient of employing an individual to "front" for non-complying unions. No less important than this is the regard which the law has for the promotion and protection of the rights of individual employees. N. L. R. B. v. Augusta Chemical Company, 5 Cir., 187 F.2d 63. These considerations have caused us to give to this case our most thoughtful study.

■ The controlling question in this case is: Did the employee, Imogene Crawford,

really and truly file the charge as an individual or was her act a mere sham, an artifice, and device? This presents a question of fact.[1] It must be determined not by a mere mechanical application of some so-called administrative rule but by a genuine appraisal of all of the evidence in the light of the circumstances then existing. This brings us to a consideration of the facts.

In February, 1946, respondent entered into a collective bargaining agreement with the United Garment Workers, A. F. L. Imogene Crawford was then the president of that union and certain of her activities in connection with this organization have already been mentioned. In November, 1947, Imogene Crawford got in touch with Harry W. Livingston, the Regional Director for the United Construction Workers, and expressed a desire to affiliate with that labor organization. As a result, Local Union No. 223 of the United Construction Workers was chartered and at a meeting of respondent's employees on February 4, 1948, Imogene Crawford was elected president. Not only did she thus invite the United Construction Workers in to take over the defunct Garment Workers Union. but she made a house-to-house canvass of respondent's employees to obtain members for the union. She called the meeting at which the strike vote was cast. She made up and directed the picket line during the strike. She advised the members to sign the mass application for re-employment. In short, this record compels the conclusion that from the beginning and throughout the period here involved Mrs. Crawford was truly the union's chief protagonist.

In this case, as in N. L. R. B. v. Alside, Inc., 6 Cir., 192 F.2d 678, the charges filed by Imogene Crawford are not limited to her individual grievances. The third amended charge against the employer alleges in part as follows:

"On February 20th, 1948, the employer discharged Mrs. Gladys Dickson, and Mrs. Gertha Coleman because of their union activities on behalf of

---

1. Southern Furniture Mfg. Co. v. N. L. R. B., 5 Cir., 194 F.2d 59; N. L. R. B. v.

Alside Inc., 6 Cir., 192 F.2d 678.

Local 223, of the United Construction Workers.

"On or about September 8th, 1948, the employer discharged Emma Lee Burnley because of her union membership and union activities.

"The employer, through its officers, agents and employees, on February 25th, 1948 discharged, and at all times thereafter has refused to employ the employees named on the attached 'Exhibit A', which is by reference, made a part of this charge, because of their membership in, and activities in behalf of Local 223, United Construction Workers, affiliated with the United Mine Workers of America, Independent.

"By the above and by other acts, the employer, through its officers, agents, and employees, has interfered with, restrained and coerced its employees in the exercise of their rights as guaranteed in Section 7 of the National Labor Relations Act, as amended [29 U.S.C. A. § 157]."

Exhibit A, which was attached to the charge, is a list of 96 employees, including Imogene Crawford. When Imogene Crawford signed and filed the original charge she was in charge of the strike and conducting the picket line as president of the union. Obviously the charges were in every respect the same as they would have been had they been prepared and filed by the Union and signed by Imogene Crawford as its president. Indeed, it affirmatively appears that the charges were in fact prepared by Harry W. Livingston, the Regional Director for the United Construction Workers. Livingston testified as follows:

"Q. Who prepared the charges against Happ Brothers Company which were filed with the National Labor Relations Board under the name of Miss Imogene Crawford, an individual? A. I prepared them.

"Q. Why did you leave Miss Jane Yarbrough's name out as one of the three people who were improperly discharged? A. Miss Jane Yarbrough did not come to us and ask us to assist her." (Emphasis supplied.)

In N. L. R. B. v. Alside, Inc., supra, there was presented a like factual situation and the Court of Appeals for the Sixth Circuit, in disposing of the issue, used this appropriate language:

"Considering the question as a whole, it stretches credulity to the breaking point to believe that Worley did not on October 20, 1948, file the charges as a representative of the Union, when, before, after and even on that day, he was its chief, active protagonist. His signature, followed by the descriptive words, 'an individual,' does not destroy the evidential facts, most of which Worley himself admits. Our conclusion is that when Worley filed the charges he was acting as a 'front' or 'agency' of the Union. We think that the record as a whole does not support the Board's conclusion. We believe the contrary." 192 F.2d 680.

█ We are of the opinion that when Imogene Crawford filed the charges she was really acting as a "front" for the union. This was a mere device whereby the labor organization could stand in open defiance of the Taft-Hartley Law and yet seek by subterfuge to reap its benefits. To say that Imogene Crawford, the president of the local union, in filing grievance charges was acting as an individual and not as a representative of the Union, is to exalt the shadow above the substance. We think the record as a whole does not support a contrary conclusion. The decision of this court in N. L. R. B. v. Southern Furniture Manufacturing Company, 5 Cir., 194 F.2d 59, and our decision in N. L. R. B. v. Augusta Chemical Company, are not to the contrary but are clearly distinguishable on their facts.

The petition for enforcement of the Board's order must be and hereby is denied.