NATIONAL LABOR RELATIONS BOARD
v. INTERNATIONAL FURNITURE CO.
No. 14201.

United States Court of Appeals
Fifth Circuit.
Nov. 12, 1952.

Frederick U. Reel, Atty., National Labor Relations Board, A. Norman Somers, Asst. Gen. Counsel, and David P. Findling, Associate Gen. Counsel, Washington D. C., for petitioner.

Hoke Smith and Welborn Cody, Atlanta, Ga., Herbert B. Kimzey, Cornelia, Ga., for respondent.

Before HUTCHESON, Chief Judge, and HOLMES and RUSSELL, Circuit Judges.

HOLMES, Circuit Judge.

After proceedings before a trial examiner, the petitioner issued its order against the respondent on March 17, 1952, and here it seeks enforcement thereof pursuant to Section 10(e) of the National Labor Relations Act, 61 Stat. 136, 29 U.S.C.A. § 151 et seq. The Board found that the respondent had discriminatorily discharged an employee by the name of Harold Almond in violation of Section 8(a)(3) and (1) of the Act, and had engaged in other practices violative of Section 8(a)(1).

The Board's order directed the company to cease and desist from (a) discouraging membership in labor organizations by discriminatorily discharging an employee; (b) interrogating its employees concerning their union activities; (c) threatening reprisals; (d) surveillance of union meetings; (e) and in any manner interfering with, restraining, or coercing its employees in the right of self-organization. The order affirmatively directed the company to reinstate and make whole said employee Almond, illegally discharged for union activities; make available various records; and post the usual compliance notices.

In October, 1950, the Upholsterers International Union of North America, affil-iated with A. F. of L., began a campaign to organize the fifty employees of the International Furniture Company. Union organizer John H. Malone appointed said Almond as his assistant in the general organizational drive. In November of the same year, during the campaign, Almond requested permission of the respondent to be absent for one afternoon in order to attend to personal matters. The plant superintendent, C. H. Oberholtzer, replied that he intended to lay Almond off at the end of the week, and that he "might as well not come back." Malone, in discussing Almond's situation with Oberholtzer, was informed that Almond had been laid off "for lack of work," and would be recalled when work was available. On this occasion, Malone related to Oberholtzer that, in the event he was not already aware of it, Almond was a member of the union. Two other employees were laid off about the same time. These two and Almond were the junior employees according to seniority.

In December, after a former employee, who had been temporarily laid off after Almond, had been recalled and another employed, Malone once more inquired concerning Almond's status. Malone was told that although the employee's work had been unsatisfactory, he would be recalled when a vacancy occurred. In February, 1951, prior to an election to determine whether the employees desired unionization, Malone indicated to the company's representatives that Almond would be a union observer. Oberholtzer and a company attorney refused to certify him, because, as they contended, he had been permanently discharged and was no longer an employee of the company. On this occasion, the plant superintendent refused to apprise the union of the exact status of Almond. A protest was duly filed by the union, based upon the company's refusal to allow Almond to serve or vote in the election. In its reply, the company stated that the employee had been discharged on November 20, 1950, for absenteeism and, although he had been known to have been drinking, this had no connection with his discharge. Four months thereafter, in answering the

650

Board's complaint, the company stated that Almond was discharged for being in an intoxicated condition while on duty, a complete reversal of its former position. Superintendent Oberholtzer, before the trial examiner, initially testified that the company had released Almond for drinking, but in a subsequent statement announced that he was motivated in releasing the employee by the union representative's attitude.

At the hearing, Oberholtzer, on cross-examination, admitted that he had made the following answer to a question propounded to him (apparently in a deposition): "Q. And the next question is, 'When did you decide that Almond was discharged, and for what reason?' A. 'After I talked with Malone the second time—I decided that Almond was discharged because Malone had said to me that he was going to tell me who I could hire and fire.'" He further testified that he told "Mr. Slyer and the Board" through counsel, Cody, that Almond was discharged on November 20th for absenteeism, but had never told Almond that. The real reason for the discharge, Oberholtzer testified, was because Almond came to work drunk.

 The trial examiner found, the Board held, and counsel contend, that the foregoing summary, particularly as it relates to the frequent shifting of positions, is sufficient to convict respondent of discharging Almond because of his union activities in violation of the Act.

The evidence concerning respondent's surveillance, interrogation, and threats of reprisal, in violation of Section 8(a)(1) of the Act, involved several incidents. We think that the finding of the examiner and the Board that Oberholtzer was engaged in surveillance and espionage is based too much on surmise and suspicion to receive our approval, and we do not concur in this finding. Nevertheless, there is still sufficient basis for support of the Board's order.

One of the employees testified that a few weeks before the election his immediate foreman, Anderson, questioned him as to whether he had attended a union meeting.

The same employee testified that, during the conversation, Anderson stated to him that if the union won the election, "We would all soon probably be out of a job." Another employee testified that his supervisor, Whitmire, told him that "if the Union was voted in we would all be out of a job."

We conclude that the findings and order of the Board, except as above stated, are supported by substantial evidence, and that the petition to enforce should be granted. N.L.R.B. v. Collins & Aikman Corp., 4 Cir., 146 F.2d 454; N.L.R.B. v. Electric City Dyeing Co., 3 Cir., 178 F.2d 980; N.L.R.B. v. Booker, 5 Cir., 180 F.2d 727; N.L.R.B. v. Vermont American Furniture Corp., 2 Cir., 182 F.2d 842; Joy Silk Mills v. N.L.R.B., 87 U.S.App.D.C. 360, 185 F.2d 732; N.L.R.B. v. Carolina Mills, 4 Cir., 190 F.2d 675; Southern Furniture Mfg. Co. v. N.L.R.B., 5 Cir., 194 F.2d 59; N.L.R.B. v. Nabors, 5 Cir., 196 F.2d 272.

Let the order be enforced.