## MAGNOLIA PETROLEUM CO. v. NATIONAL LABOR RELATIONS BOARD.

### No. 14079.

United States Court of Appeals
Fifth Circuit.

Dec. 2, 1952.

Roy C. Ledbetter, Dallas, Tex., James T. Fitzpatrick, Beaumont, Tex., for petitioner.

Samuel M. Singer, Atty. National Labor Relations Board, A. Norman Somers, Asst. Gen. Counsel, David P. Findling, Associate Gen. Counsel, Washington, D. C., for respondent.

Before HUTCHESON, Chief Judge, and BORAH and RIVES, Circuit Judges.

HUTCHESON, Chief Judge.

Feeling itself aggrieved by the findings[1] and order of the Board,[2] petitioner seeks to set the order aside while the Board, in its answer, seeks its enforcement.

Meeting head on the finding that Duncan was discriminatorily discharged, petitioner, citing the many cases [3] supporting it, invokes the established rule that an employer may discharge an employee for any cause or no cause, and the board can make nothing of it so long as it is not for, or in discouragement of, such activities as the Act declares permissible.

Insisting that Duncan was discharged for insubordination as the culmination of a series of insubordinate acts, petitioner picks out evidence to sustain its claim that the finding is without substantial support in the evidence, while respondent, as firmly insisting that the finding was well supported, points to the evidence on which it relied in making it.

A careful examination of the evidence for ourselves leaves us in no doubt: that there is evidence supporting the view of petitioner that Duncan was, to some extent, unruly and a trouble maker; and that if the petitioner had discharged him for those reasons or for no reason at all, provided the discharge was not for, or connected with, union activities, the fact that he belonged to the union would not have prevented his discharge or entitled him to reinstatement.

There is other evidence, though, which not only supports, but we think estabishes as correct, the view the board took: that, until the union issue arose, these complained of acts of his were all condoned and would have continued to be condoned; and that the straw that broke the back of petitioner's tolerance and condonation was the union activity in the plant and Duncan's remark about the union stopping the fifteen hour day. We are in no doubt that this remark whether merely impetuous and impromptu, or springing from surly and deepseated resentment, was what fanned the smoldering fuse of resentment in John-

1. In substance these were: (1) that statements by the employer were coercive and restraining as to union organization and activities; and (2) that Nolan W. Duncan was discriminatorily discharged.

2. In substance this required the respondent: (1) to cease and desist from discouraging membership in Oil Workers International Union or any other labor organization, or in any manner interfering with their employees; and (2) to reinstate and make whole Nolan W. Duncan. 98 N.L.R.B.No.190.

3. N. L. R. B. v. Fulton Bag & Cotton Mills, 5 Cir., 175 F.2d 675; 29 U.S.C.A. § 160 (c); N. L. R. B. v. Bibb Mfg. Co., 5 Cir., 188 F.2d 825; N. L. R. B. v. Supreme Bedding Mfg. Co., 5 Cir., 196 F. 2d 997; N. L. R. B. v. Ray Smith Transport Co., 5 Cir., 193 F.2d 142.

son's mind against both Duncan and the Union into the flash of the explosion which resulted in Duncan's discharge.

■ We think this appears as the *res gestae* of the occurrence and the subsequent happenings. But if not, the evasion and equivocation and the belatedness w⁻.:ch attended giving the reason for the discharge would furnish ample additional support for the finding.[4]

To the findings made in support of the cease and desist provision of the order, the petitioner's defenses seem to be based upon its over all record, as an institution, of fairness and impartiality in dealing with organized labor, its attitude of non-interference with its employees, and its expression of policy in respect to its employees joining or not joining a union.

■ This, however, was not the issue presented for the consideration of the board. It is not the touchstone by which we are to solve the question presented for our determination here. That question is, giving full consideration to petitioner's expression of policy and its attitude in general, and viewing the record as a whole, does the evidence, as to things said and done by responsible representatives of petitioner in connection with the events the record discloses, furnish a sufficient basis for the findings and conclusions of the examiner and board, that there was interference.

We think it does.

■ In saying so, we are not unmindful of the complained of rulings of the examiner, with which we do not agree, that a question whether the witness knew that it was the position of Mr. Hotchkiss and the company that the employees could join or not join the union, was a conclusion and could not be testified to. It is not disputed, however, that the same matter came in later by another witness and that the policy of the company to that effect was conveyed to all the employees in writing.

The issue, therefore, comes down to this, whether the record affords a reasonable basis for the finding that, notwithstanding the general declarations of purpose' and policy, on which petitioner relies, there was, under the evidence in this case, at this place and at this time, interference in contravention of the act.

We think: that the finding that there was is well supported by the evidence; that the petition to set aside the order should be denied; and that the order should be enforced as written.

---

4. N. L. R. B. v. International Furniture Co., 5 Cir., 199 F.2d 648.