NATIONAL LABOR RELATIONS BOARD *v.*
HIGHLAND PARK MANUFACTURING CO.

No. 425.   Argued April 23, 1951.—Decided May 14, 1951.

*Mozart G. Ratner* argued the cause for petitioner.
With him on the brief were *Solicitor General Perlman,*
*James L. Morrisson, David P. Findling* and *Alvin Gallen.*

*Whiteford S. Blakeney* argued the cause and filed a brief for respondent.

Briefs of *amici curiae* urging reversal were filed by *J. Albert Woll, Herbert S. Thatcher* and *James A. Glenn* for the American Federation of Labor; *Arthur J. Goldberg* and *Thomas E. Harris* for the Congress of Industrial Organizations; and *Isadore Katz* and *David Jaffe* for the Textile Workers Union of America.

MR. JUSTICE JACKSON delivered the opinion of the Court.

The National Labor Relations Board entertained a complaint by the Textile Workers Union of America against respondent, Highland Park Manufacturing Company, and ordered respondent to bargain with that Union. At all times relevant to the proceedings, the Textile Workers Union was affiliated with the Congress of Industrial Organizations and, while the Textile Workers Union officers had filed the non-Communist affidavits pursuant to statute, the officers of the C. I. O. at that time had not. The statute provides that "No investigation shall be made by the Board . . ., no petition under subsection (e) (1) of this section shall be entertained, and no complaint shall be issued pursuant to a charge made by a labor organization under subsection (b) of section 160 of this title, unless there is on file with the Board an affidavit executed . . . by each officer of such labor organization and the officers of any *national or international labor organization* of which it is an affiliate or constituent unit that he is not a member of the Communist Party [etc.]." § 9 (h) of the National Labor Relations Act, as amended by the Labor Management Relations Act, 61 Stat. 146, 29 U. S. C. (Supp. III) § 159 (h). (Italics added.) The order was challenged upon the grounds, among others, that the failure of the C. I. O. officers to file non-Com-

munist affidavits disabled its affiliate, the Textile Workers Union, and the Board could not entertain their complaint and enter the order.

The general counsel of the Board had ruled that the Board could not entertain a complaint under these circumstances; but the Board, with one member dissenting, overruled him, for reasons stated in *Matter of Northern Virginia Broadcasters,* 75 N. L. R. B. 11. The Court of Appeals for the District of Columbia Circuit reached the same conclusion as the Board in *West Texas Utilities Co.* v. *Labor Board,* 87 U. S. App. D. C. 179, 184 F. 2d 233. The Court of Appeals for the Fourth Circuit in this case, 184 F. 2d 98, and the Court of Appeals for the Fifth Circuit, in *Labor Board* v. *Postex Cotton Mills,* 181 F. 2d 919, arrived at a contrary result, holding that the Board could not entertain the complaint. The conflicting results are each so well-considered and so thoroughly documented in opinions already appearing in the books that little could be added to either. We agree with the conclusions of the Fourth and Fifth Circuits.

The definition of "labor union" in the statute concededly includes the C. I. O. It is further conceded that the phrase "labor organization national or international *in scope*" as found in § 10 (c) refers to the A. F. of L. and C. I. O. (Italics added.) But it is claimed that when the adjectives "national" or "international" are alone added, they exclude the C. I. O., because it is regarded in labor circles as a federation rather than a national or international union. We think, however, that the use of geographic terms to reach nation-wide or more than nation-wide unions does not exclude those of some particular technical structure. The C. I. O., being admittedly a labor union and one of nation-wide jurisdiction, operation and influence, is certainly in the speech of people a national union, whatever its internal composition. If Congress intended geographic adjectives to have

a structural connotation or to have other than their ordinarily accepted meaning, it would and should have given them a special meaning by definition.

The language in its ordinarily accepted sense is consistent with the context and purpose of the Act, which we have defined at length in *American Communications Assn.* v. *Douds,* 339 U. S. 382. As the Courts of Appeals for both the Fourth and Fifth Circuits have said, the congressional purpose was to "wholly eradicate and bar from leadership in the American labor movement, at each and every level, adherents to the Communist party and believers in the unconstitutional overthrow of our Government." 181 F. 2d 919, 920; 184 F. 2d 98, 101. It would require much clearer language of exemption to justify holding that the very top levels of influence and actual power in the labor movement in this country were untouched while only the lower levels were affected.

The further contention is advanced by the Board that the administrative determination that a petitioning labor organization has complied with the Act is not subject to judicial review at the instance of an employer in an unfair labor practice proceeding. If there were dispute as to whether the C. I. O. had filed the required affidavits or whether documents filed met the statutory requirements and the Board had resolved that question in favor of the labor organizations, a different question would be presented. But here there is no question of fact. While the C. I. O. officers have since filed the affidavits, they were not on file at any time relevant to this proceeding.

It would be strange indeed if the courts were compelled to enforce without inquiry an order which could only result from proceedings that, under the admitted facts, the Board was forbidden to conduct. The Board is a statutory agency, and, when it is forbidden to investigate or entertain complaints in certain circumstances, its final order could hardly be valid. We think the contention is

without merit and that an issue of law of this kind, which goes to the heart of the validity of the proceedings on which the order is based, is open to inquiry by the courts when they are asked to lend their enforcement powers to an administrative tribunal.

*Judgment affirmed.*

MR. JUSTICE BLACK took no part in the consideration or decision of this case.

MR. JUSTICE FRANKFURTER, dissenting.

Congress, of course, could have exacted affidavits of nonmembership in Communist organizations from the officers of all local unions, of all nationals and internationals of which locals are constituents, and of all the federated organizations—*i. e.*, the C. I. O. and the A. F. of L.—of which national and international organizations are members. To carry out such a purpose it could have been explicit. It could also have used some colloquially all-embracing term such as the phrase "national or international in scope" which it in fact did employ in § 10 (c) of the Act. Congress did not choose to express its will in either of these unequivocal forms. Instead it used the phrase "national or international labor organization."

The fact that the phrase "national or international labor organization" consists of ordinary English words, which to the ordinary ear may carry a meaning different from that which they carry in the domain of industrial relations, does not destroy our duty to determine whether they do have a technical meaning when used in regard to matters of industrial relations. See the decision, per Holmes, J., in *Boston Sand Co.* v. *United States,* 278 U. S. 41, 48. The Taft-Hartley Act is not an abstract document to be construed with only the aid of a standard dictionary. Its sponsors were familiar with labor organization and labor problems and it was doubtless drawn by specialists in

labor relations. If they used terms having a special meaning within the field, such words of art, in the absence of contrary indications, must be given that meaning.

The best source for us in determining whether a term used in the field of industrial relations has a technical connotation is the body to which Congress has committed the administration of the statute. Certainly, if there is no reasonable ground for rejecting the determination of the National Labor Relations Board, its view should not be rejected. We are advised by the Board that "national and international organization" is a term of art referring to the autonomous national and international organizations of workers which in federation constitute the C. I. O. and the A. F. of L. "We are familiar with no use of the term 'national or international labor organization' which includes parent federations such as the AFL or the CIO within its meaning. On the contrary, every definition or description of the structure of these two federations clearly indicates that the AFL and the CIO are different from 'national' or 'international' labor organizations." *Northern Virginia Broadcasters, Inc.,* 75 N. L. R. B. 11, 13. Nothing called to our attention has put in question this authoritative finding by the National Labor Relations Board. We ought not, therefore, to reject it.

MR. JUSTICE DOUGLAS, dissenting.

I see no answer to the analysis of MR. JUSTICE FRANKFURTER if objectivity is our standard and if the expertise of administrative agencies is to continue as our guide. In situations no more difficult than this we have taken the administrative construction of statutory words. Until today the test has been not whether the construction would be our own if we sat as the Board, but whether it has a reasonable basis in custom, practice, or legislative

history. See *Gray* v. *Powell,* 314 U. S. 402; *Labor Board* v. *Hearst Publications,* 322 U. S. 111.

Of course the C. I. O. is at times a "national or international labor organization" within the meaning of the Act. The Board so held in *American Optical Co.,* 81 N. L. R. B. 453. In that case the petitioning labor organization was an "organizing committee" of the C. I. O. over which the C. I. O. had control comparable to the power a "national or international" union exercises over its constituent unions. The same would be true of local unions directly chartered by the C. I. O. If one of those unions had filed the complaint against respondent, then the C. I. O. would have to file the affidavits, since it would be in the relation of a "national or international labor organization" to that dispute. A labor organization which has that relation to a dispute has the power and control at which the affidavit provision is aimed. If we took, as we customarily do, the administrative construction of the words Congress used, we would hold that the C. I. O. must file the affidavits only when in the dispute before the Board it stands, as it sometimes does, in the position of "national or international labor organization"—to use the parlance of the trade. But that is a different case from the one before us.