**NATIONAL LABOR RELATIONS BOARD v. J. I. CASE CO., BETTENDORF WORKS.**

**No. 14218.**

United States Court of Appeals Eighth Circuit.

June 5, 1951.

Marcel Mallet-Prevost and Bernard Dunau, Attorneys, National Labor Relations Board, Washington, D. C. (George J. Bott, Gen. Counsel, David P. Findling, Associate Gen. Counsel, A. Norman Somers, Asst. General Counsel, and Thomas J. McDermott, Atty., all of Washington, D. C., were with them on the brief), for petitioner.

John F. Lane, Washington, D. C. (Clark M. Robertson, Milwaukee, Wis., William F. Howe, Washington, D. C., Robertson & Johnson, Milwaukee, Wis., and Gall & Lane, Washington, D. C., were with him on the brief) for respondent.

Before GARDNER, Chief Judge, and THOMAS and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

This case is here upon the petition of the National Labor Relations Board for the enforcement of its order directing respondent J. I. Case Company to bargain collectively with International Union, United Automobile, Aircraft and Agricultural Implement Workers of America, affiliated with the Congress of Industrial Organizations, as representative of all production and maintenance employees, with certain exceptions not important here, at respondent's Bettendorf, Iowa, plant. Respondent admits its refusal to comply with the order of the Board and resists the Board's petition for enforcement on the ground that UAW is not the legal bargaining agent of any of its employees. Of the grounds advanced by respondent in support of its contention, we find it necessary to consider only one, which is, that at the time of the initiation and conclusion of the certification proceeding before the Board under section 9(c) of the Labor Management Relations Act of 1947, 29 U. S.C.A. § 159(c), as well as at the time of the institution of the unfair labor practice proceeding under section 10(b) of the Act, 29 U.S.C.A. § 160(b), which followed the certification of UAW as bargaining representative of respondent's employees, the officers of the Congress of Industrial Organizations, with which UAW was affiliated, had not complied with section 9(h) of the Act. There is no question of fact involved in the solution of the problem presented.

Section 9(h) of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 159 (h), in effect at all times pertinent to this proceeding, provides: "No investigation shall be made by the Board of any question affecting commerce concerning the representation of employees, raised by a labor

organization under subsection (c) of this section * * * and no complaint shall be issued pursuant to a charge made by a labor organization under subsection (b) of section 10 of this title, unless there is on file with the Board an affidavit executed contemporaneously or within the preceding twelve-month period by each officer of such labor organization and the officers of any national or international labor organization of which it is an affiliate or constituent unit that he is not a member of the Communist Party or affiliated with such party * * *." The petition in the representation proceeding under section 9(c) of the Act was filed with the Board on May 14, 1948, came on for hearing before the Board's hearing officer on July 18, 1948, and resulted in the order of the Board certifying the UAW as exclusive bargaining representative of respondent's production and maintenance employees on August 5, 1949. The unfair labor practice proceeding of the UAW was filed with the Board on November 15, 1949, and the order in that proceeding which the Board now seeks to enforce was entered by the Board on April 10, 1950. The CIO did not comply with the requirements of section 9(h) until December 22, 1949.

On October 7, 1947, the Board had held in Northern Virginia Broadcasters, Inc., 75 N.L.R.B. 11, that Congress did not intend by section 9(h) of the Act that complying labor organizations affiliated with parent federations, such as the American Federation of Labor and the Congress of Industrial Organizations, should be denied the process of the Board because of the failure of such parent federations to comply with the section. On May 5, 1950, in National Labor Relations Board v. Postex Cotton Mills, Inc., 181 F.2d 919, the Court of Appeals for the Fifth Circuit reached the opposite conclusion. Following this decision respondent moved the Board to vacate its order in the proceeding under section 10(b) on the ground that the Board was forbidden by section 9(h) of the Act to conduct the certification proceeding under section 9(c) of the Act and the unfair labor practice proceeding under section 10(b) because when these proceedings began the CIO had failed to comply with the requirements of the Act. Respondent asserted that the Board was without authority to conduct the certification proceeding or entertain the petition of UAW in the unfair labor practice proceeding, and that the orders of the Board certifying the UAW as bargaining representative and directing respondent to bargain with it as such representative were void because made in proceedings which Congress had forbidden the Board to undertake.

Respondent's motion to vacate was overruled on May 29, 1950, on authority of the Board decision in the Bethlehem Steel Company matter, 89 N.L.R.B. No. 210, decided May 19, 1950. In this case the Board adhered to its decision in Northern Virginia Broadcasters, Inc., saying that: "With due respect for the opinion of the Court of Appeals for the Fifth Circuit, 181 F.2d 919, the Board is constrained to adhere to the Board's original view until the Supreme Court of the United States has had an opportunity to pass on the question."

The awaited event has now occurred. In National Labor Relations Board v. Highland Park Mfg. Co., 71 S.Ct. 758, 760, the Supreme Court affirmed the decision of the Fourth Circuit, 184 F.2d 98, which concurred in the ruling in the Postex case. The Supreme Court held that the Board could not entertain a complaint under section 10(b) of the Act presented by a union qualified under section 9(h) but affiliated with the CIO which had failed to qualify, and that the question whether a petitioning labor union had complied with the Act was subject to judicial review, saying: "It would be strange indeed if the courts were compelled to enforce without inquiry an order which could only result from proceedings that, under the admitted facts, the Board was forbidden to conduct."

The Board's argument that its order should be sustained because the CIO, although not in compliance with section 9(h) at the time the Board took jurisdiction of either of the proceedings which it was forbidden to hear, nevertheless, did comply

before the Board's final order was entered, is also answered by the Supreme Court in the Highland Park case and by the Board itself in the matter of Isaac Andrews, et al., 87 N.L.R.B., No. 62, in which in a section 10(b) proceeding the Board's trial examiner found the employer guilty of unfair labor practice in refusing to bargain with a complaining union. The employer excepted to the examiner's finding contending that it was not obligated to bargain with the union because of its failure to comply with the requirements of section 9(h) at the time of the request for recognition.

The union had complied with the Act's filing requirements shortly after its bargaining request. The Board sustained the employer, saying:

"The Board, in dealing with a non-complying union, is forbidden to take the following steps: (a) it may not investigate a question concerning the representation of employees or certify the union as the statutory bargaining representative; * * * (c) it may not issue a complaint pursuant to a charge filed by the organization. * * * To assert, as do our dissenting colleagues, that these standards should be met only when it becomes necessary for a labor organization to resort to the Board is, in our opinion, a perversion of legislative intent. * * *

"Nor do we believe that the Union's subsequent compliance cured the effects of its non-compliance which existed at the time of its request to bargain. The Act does not state, nor may it be implied, that the Board should give retroactive effect to the Union's compliance. Such an interpretation would permit the circumvention of these provisions, for a non-complying labor organization could compel recognition by the mere threat of subsequent compliance and the filing of a charge. Moreover, we would be giving the non-complying union the very remedy which Congress specifically denied it. Furthermore, the fundamental purpose of the Act is to encourage and protect the practice and procedure of collective bargaining. Labor organizations which fail to meet the filing requirements remove themselves from the protection of the Act and thus weaken their bargaining position. We do not believe that Congress intended the Board to extend retroactive protection to those organizations, which have thus thwarted an established public policy."

Here it is admitted that the CIO had not complied with section 9(h) of the Act at the time the UAW appeared in the representation proceeding under section 9(c), nor at the time the Board certified the UAW as the bargaining agent of respondent's production and maintenance employees, nor at the time the National Labor Relations Board took jurisdiction of the unfair labor practice proceeding under section 10(b). The sole reason advanced by the Board for its refusal to set aside its order was its holding that as a matter of law the CIO was not required to comply with section 9(h). But for its erroneous opinion on this question of law, the Board, if it adhered to its decision in the Isaac Andrews case, would have set aside the order which it now seeks to enforce.

Enforcement denied.