## NATIONAL LABOR RELATIONS BOARD
### v. TENNESSEE EGG CO.
#### No. 11465.

United States Court of Appeals
Sixth Circuit.
Oct. 17, 1952.

Dominick L. Manoli, Washington, D. C. (George J. Bott, David P. Findling, A. Norman Somers, Dominick L. Manoli, and Irving M. Herman, Washington, D. C., on the brief), for petitioner.

W. D. Spears, Chattanooga, Tenn. (W. D. Spears, Spears, Reynolds, Moore & Rebman, Chattanooga, Tenn., Dan M. Byrd, Jr., Atlanta, Ga., on the brief), for respondent.

Before MARTIN, McALLISTER and MILLER, Circuit Judges.

MARTIN, Circuit Judge.

In an appropriate and customary manner, the National Labor Relations Board petitions this court for enforcement of one of

its cease and desist and affirmative action orders against an employer. But the question presented is unusual: Should an employer be held to have been obligated to bargain collectively with a labor union where, at the time of acts complained of as unfair labor practices, the union had not complied with sections 159(f), (g) and (h) of the Labor Management Relations Act of 1947, section 159 (f), (g) and (h), Title 29 U.S.C.A., yet had complied with such sections at the time the complaint was filed?

The Labor Board has given, in two cases, diametrically opposite answers to this question. First, in Andrews Company, 87 N.L.R.B. 379, the Labor Board held that a company was under no obligation to bargain collectively with a labor union which at the time of the refusal to so bargain had not complied with the foregoing statutory requirements. In New Jersey Carpet Mills, Inc., 92 N.L.R.B. 604, the Board overruled its decision in the Andrews case and held that the union's noncompliance with those sections did not excuse the employer from bargaining collectively with it. In the instant case, the Trial Examiner, who filed his intermediate report before the New Jersey Carpet Mills decision had been announced by the Labor Board, followed and applied its holding in the Andrews case. The Board having reversed itself, also reversed the Trial Examiner.

It is undisputed in this case that the union did not comply with the pertinent sections of the Act until December 1, 1947, in consequence of which the Trial Examiner was impelled to the conclusion that the respondent company was under no duty to bargain with the union after the effective date of the Labor Management Relations Act, August 22, 1947. He also stated in his report that it was quite possible that the respondent's refusal to bargain with the union on September 15, 1947, and thereafter, may have affected adversely the union's majority status; but, by virtue of the holding of the Board in the Andrews case, he considered that the union had no redress against the respondent for what might otherwise have been found to constitute unfair labor practices. The Trial Examiner asserted further that the record clearly demonstrates that on and after December 1, 1947, the date on which the union complied with the sections involved, it was no longer the majority representative of the employees and therefore the respondent owed no duty to bargain with it, in consequence of which the Examiner recommended that the allegations of the complaint as to the refusal of respondent to bargain collectively should be dismissed. The Board, however, declined to carry out this recommendation.

The Trial Examiner failed also to receive the support of the Board in his recommendation that the allegations of the complaint concerning a unilateral increase in pay given the employees by the respondent company around December 15, 1947, should be dismissed because the company was not then under a duty to bargain with the union. The Board based its action on the statement that there was no evidence to rebut the presumption of the continuing majority of the union. Wherefore, the unilateral increase was found to be in violation of section 8(a) (1) of the Act.

The Board agreed with the Trial Examiner that respondent also violated the section of the Act just cited, by threatening, on December 15, 1947, in a speech by its president, Carbaugh, to discharge any employee who should go on strike in the future. As found by the Trial Examiner upon substantial evidence, the union, at the time Carbaugh made his statement, was not the majority representative of the employees. With this finding, the Board disagrees.

The Board concurred in the Trial Examiner's holding that the respondent company had not violated section 8(a) (1), or (3) of the Act by discharging discriminatorily, or refusing to reinstate or rehire any of its employees. Upon review of the entire record, we find this holding to be supported, not only by substantial evidence, but by a preponderance of all the evidence.

We shall now discuss what we consider to be the sole and crucial question to be answered.

Subsections (f), (g) and (h) of section 159, Title 29 U.S.C.A., forbid investigation by the Board in any matter where there has been a failure by the complaining union to file its constitution, by-laws, and required reports and affidavits showing that its officers are free from communistic party affiliation or belief. The vital subsection of the three, with which the Board most concerned itself in the Andrews case, 87 N.L.R.B. 379, 380, 383, supra, is subsection (h), which is quoted in a marginal footnote.[1]

In the Andrews case, the majority membership of the National Labor Relations Board called attention to the fact that, by section 9(h), 29 U.S.C.A. § 159(h), Congress hoped to purge Communists from the labor movement; that, unlike the Wagner Act which gave unqualified protection to labor organizations, the amended Act prescribed certain standards considered necessary to the public interest, peace and welfare. The assertion of their dissenting colleagues that the required standard should be met only when it became necessary for a labor organization to resort to the Labor Board was asserted to be, in the opinion of the majority, a perversion of the legislative intent. It was said that, while the legislative history of the Act was not dispositive of the legislative intent, judicial notice could be taken that Communism and other undemocratic doctrines and practices constitute an inherent threat to the labor movement in this country. One of its previous decisions was cited to the effect that an employer was not obligated to bargain with a non-complying union. Consistency was said to demand the same result in the Andrews case. Should it be found that the respondent had violated the Act when the union was not in compliance with it, it was thought that the result would not effectuate the purposes of the Act and would constitute a utilization of the processes of the Board to give an aura of respectability to all non-complying unions. It was pointed out that, while under the Wagner Act the remedy afforded was unlimited, under the amended Act the remedy is limited by the filing provisions; and that the Board was dealing with a statute which created an obligation and, at the same time, a remedy, with the resultant that a limitation on the remedy should be treated as a limitation on the right itself. This was derived from the fact that the Act creates statutory rights unknown to the common law.

The majority of the Board held that the union's subsequent compliance failed to cure the effect of its non-compliance existing at the time it requested the employer to bargain with it as exclusive representative of the employees. It was stated that the Act does not declare, nor may it be implied, that the Labor Board should give retroactive effect to compliance by the union with the filing requirements. An interpretation to such effect would, in the opinion of the majority of the Board, have permitted the circumvention of the provision of the Act, inasmuch as a non-complying labor organization could compel recognition by a mere threat of subsequent compliance and the filing of a charge. It was emphasized that this would give a non-complying union the exact remedy which Congress specifically denied. It was emphasized that the fundamental purpose of the Act being the encouragement and protection of the practice and procedure of collective bargaining, labor organizations

---

[1] "(h) No investigation shall be made by the Board of any question affecting commerce concerning the representation of employees, raised by a labor organization under subsection (c) of this section, and no complaint shall be issued pursuant to a charge made by a labor organization under subsection (b) of section 160 of this title, unless there is on file with the Board an affidavit executed contemporaneously or within the preceding twelve-month period by each officer of such labor organization and the officers of any national or international labor organization of which it is an affiliate or constituent unit that he is not a member of the Communist Party or affiliated with such party, and that he does not believe in, and is not a member of or supports any organization that believes in or teaches, the overthrow of the United States Government by force or by any illegal or unconstitutional methods- * * *"

failing to meet the required filing requirements thereby remove themselves from the protection of the Act. It was not believed that Congress intended that the Board should extend retroactive protection to labor organizations which had thwarted an established public policy.

As has been previously stated, the Labor Board did not stick to its well reasoned opinion in the Andrews case; for, in the New Jersey Carpet Mills case, 92 N.L.R.B. 604, a diametrically opposite conclusion was reached. There, the Board asserted that, in enacting the statutory filing requirements, Congress did not condition the obligation of an employer to bargain with a union representing the majority of its employees upon compliance with those requirements, but only imposed certain specific limitations upon the use by the union of the Board's processes, as long as the union failed to comply. The Labor Board concluded that, when the union had perfected compliance with the statutory requirements, it could invoke the machinery of the Act for redress of an employer's prior refusal to bargain with it, at least when the employer had not assigned as a reason for its refusal the status of the union in not having complied. The Andrews case was expressly overruled.

The Court of Appeals for the District of Columbia (one judge dissenting) disagreed with the decision of the Board in the Andrews case, supra, but the Court of Appeals for the Eighth Circuit approved it. In West Texas Utilities Co. v. National Labor R. Bd., 87 U.S.App.D.C. 179, 184 F.2d 233, 239, the District of Columbia Court said: "The failure of union officers to comply with 9(h) does not in any way relieve an employer of the paramount obligation to bargain collectively in good faith. The Act's only sanction for non-compliance is denial of Board facilities. Thus, if an unfair labor practice is committed by an employer, the union may not seek Board aid to compel him to cease and desist 'unless there is on file with the Board an affidavit executed *contemporaneously or within the preceding twelve-month period*' by the officers covered. Since this language specifically contemplates that the requisite affidavits may be filed '*contemporaneously*' with invocation of Board facilities, the unfair practice against which they are invoked obviously must have occurred earlier. It is thus the Board which refuses its processes to the non-complying union, not the employer. We do not think an employer may take the matter into his own hands and refuse to bargain with a union because its officers have not filed. If he does so, the ability of the union to successfully invoke Board processes thereafter, so long as its officers file beforehand, may result in his being cited for an unfair labor practice.

"Unlike the phrase 'national or international labor organization,' we think the language of the statute is clear on this point. It is neither ambiguous nor a term of art depending upon technical sources for its meaning. We disagree with the contrary position taken by the Board in Matter of Andrews."

On the other hand, as has been observed, the Eighth Circuit, in National Labor Relations Bd. v. J. I. Case Co., 8 Cir., 189 F. 2d 599, 601, found error in the Labor Board's departure from its decision in the Andrews case. The court held invalid an .order of the Board directing an employer to bargain with a union and declined to enforce its order, where it was shown that the officers of a parent union had not filed non-Communist affidavits at the time the local union appeared in a representation proceeding, nor at the time the Board certified it as bargaining agent, nor at the time the Board took jurisdiction of an unfair labor practice, even though at the time of the final order the officers of a parent union had filed the required non-Communist affidavit. The opinion concluded: "The sole reason advanced by the Board for its refusal to set aside its order was its holding that as a matter of law the C.I.O. was not required to comply with section 9(h). But for its erroneous opinion on this question of law, the Board, if it adhered to its decision in the Isaac Andrews case, would have set aside the order which it now seeks to enforce. Enforcement denied." The opinion discussed the decision of the Supreme Court in Nation-

al Labor Relations Board v. Highland Park Manufacturing Co., 341 U.S. 322, 71 S.Ct. 758, 95 L.Ed. 969, stating that the Board's argument that its order should be sustained because the C.I.O., although not in compliance with section 9(h) at the time the Board took jurisdiction of either of the proceedings which it was forbidden to hear, nevertheless did comply before the Board's final order was entered, is answered by the Supreme Court in the Highland Park case and by the Board itself in the Andrews case.

In the Highland Park case, the Supreme Court affirmed the denial by the Court of Appeals for the Fourth Circuit, 184 F.2d 98, of enforcement of an order of the Labor Board requiring an employer to bargain with a union affiliated with C.I.O., for the reason that the officers of the latter had not filed the non-Communist affidavits required by section 9(h) of the National Labor Relations Act, as amended by the Labor Management Relations Act, 61 Stat. 146, 29 U.S.C.A. § 159(h). The Supreme Court disapproved the conclusions in West Texas Utilities Co. v. National Labor Relations Board, 184 F.2d 233, supra, and of the Board in the case before it; and approved the conclusions of the Court of Appeals for the Fourth Circuit under review, 184 F.2d 98, and of the Court of Appeals for the Fifth Circuit in National Labor Relations Board v. Postex Cotton Mills, 5 Cir., 181 F.2d 919, 920. It was said that each of the conflicting results had been so well considered and so thoroughly documented in opinions already appearing in the books that little further could be added to either. The Supreme Court quoted approvingly the language of Judge Russell of the Fifth Circuit Court of Appeals in the Postex Cotton Mills case, supra, which was also quoted by Judge Parker for the Fourth Circuit Court of Appeals in the Highland Park case, to the effect that the congressional purpose was to "wholly eradicate and bar from leadership in the American labor movement, at each and every level, adherents to the Communist party and believers in the unconstitutional overthrow of our Government." On behalf of the Supreme Court, Mr. Justice Jackson said, 341 U.S. 325, 326, 71 S.Ct. 760: "It would be strange indeed if the courts were compelled to enforce without inquiry an order which could only result from proceedings that, under the admitted facts, the Board was forbidden to conduct. The Board is a statutory agency, and, when it is forbidden to investigate or entertain complaints in certain circumstances, its final order could hardly be valid. We think the contention is without merit and that an issue of law of this kind, which goes to the heart of the validity of the proceedings on which the order is based, is open to inquiry by the courts when they are asked to lend their enforcement powers to an administrative tribunal."

The Court of Appeals for the First Circuit denied a petition for enforcement of an order of the Labor Board upon the authority of the foregoing opinion of the Supreme Court and that of the Eighth Circuit in National Labor Relations Board v. J. I. Case Co., supra. National Labor Relations Board v. Clark Shoe Co., 1 Cir., 189 F.2d 731, 733. There, the proceedings were held to be invalid where the charge, pursuant to which the National Labor Relations Board issued its complaint, was filed by a union whose officers had executed non-Communist affidavits but whose parent body's officers failed to file such affidavits until after the union had brought its petition for certification of bargaining representatives and after the complaint had been issued. It was held further that an employer may properly raise the issue of the failure of the officials of the union to file non-Communist affidavits.

In Cathey v. National Labor Relations Board, 5 Cir., 189 F.2d 428, a petition for enforcement of an order of the Labor Board was denied and the complaint dismissed by the Court of Appeals, where the union concerned had failed to comply with the non-Communist affidavit provisions of the Act.

This court, in National Labor Relations Board v. Alside, Inc., 6 Cir., 192 F.2d 678, held that the Labor Board lacked jurisdiction to issue a complaint made by a labor organization, unless there was on file with

the Board the non-Communist affidavits required by section 9(h). Wherefore, enforcement of an order of the Labor Board was denied upon a record showing, contrary to the Board's finding, that the individual who made the charges was actually acting as a "front" or agency for the union.

■ In upholding the constitutionality of section 9(h) of the National Labor Relations Act, as amended by the Labor Management Act of 1947, Chief Justice Vinson, writing the majority opinion for the Supreme Court, asserted in American Communications Ass'n v. Douds, 339 U.S. 382, 70 S.Ct. 674, 94 L.Ed. 925, that among the purposes of the amended Act was the removal of obstructions to the free flow of commerce resultant from "political strikes" instigated by Communists who had infiltrated the management of labor organizations and were subordinating legitimate trade union objectives to obstructive strife when dictated by Communist party leaders, often in support of the policies of a foreign government. From our reading of the opinion in entirety, we infer that the highest court considered compliance by a union with section 9(h) to obtain the benefits granted by the Act to be a necessity; and that the requirement of compliance should be strictly enforced to prevent the continuing danger of disruptive strikes instigated by Communists holding positions of union leadership. It may be that we are overindulgent in inferences; but, nonetheless, we do infer from the opinion of the Chief Justice that the filing of the non-Communist affidavits at the time a charge is filed before the Board should not properly be construed to have retroactive effect. We gather this from the strong expressions of the Chief Justice in condemnation of Communism. This court, both individually and collectively, holds a like point of view.

■■ In reply to the "literal language" argument of the Board against denial of enforcement of its order in the instant case, the doctrine of United States v. American Trucking Ass'n, 310 U.S. 534, 543, 60 S.Ct. 1059, 84 L.Ed. 1345, should be applied. There, the Supreme Court said,

in effect, that, whenever acceptance of the literal meaning of words in a statute leads to absurd or futile results plainly at variance with the policy of the legislation, courts should follow and apply the legislative purpose. Here, the mere fact that the language of the Act simply denies the processes of the Labor Board to unions whose officers have failed to comply with section 9(h), 29 U.S.C.A. § 159(h), does not indicate that a union, in a status of non-compliance when the acts of which it complains were committed by the employer, may retroactively cure the defect of its non-compliance status by filing the required affidavits at the time the aid of the Labor Board is invoked.

The opinion of this court in National Labor Relations Board v. Mylan-Sparta Co., 6 Cir., 166 F.2d 485, cited by the Board, is, in our opinion, of no aid to the decision in the present controversy; for, in that case, it was merely held that the Labor Management Relations Act of 1947 is prospective, not retroactive, in its effect.

For the reasons which we have attempted to make apparent, the petition of the National Labor Relations Board for enforcement of its order is denied.