**NATIONAL LABOR RELATIONS BOARD**

v.

**UNION BUS TERMINAL OF DALLAS, TEXAS, Inc.**

**No. 14717.**

United States Court of Appeals Fifth Circuit.

April 15, 1954.

A. Norman Somers, Asst. Gen. Counsel, David P. Findling, Associate Gen. Counsel, George J. Bott, Gen. Counsel, Edmond F. Rovner, Arnold Ordman, Attys. N. L. R. B., Washington, D. C., for petitioner.

Alfred Crager, Carl B. Callaway, Dallas, Tex., for respondent.

Before BORAH and RUSSELL, Circuit Judges, and DAWKINS, District Judge.

DAWKINS, District Judge.

The petition of the National Labor Relations Board for enforcement in this case, is based upon its finding that respondent violated Section 8(a), (3), and (1) of the Taft-Hartley Act, 29 U.S.C.A. § 158(a)(3, 1), by denying reinstatement of one Betty Lundy, who, with about 30 other employees, had engaged in a strike at the respondent's bus station in the City of Dallas on December 24, 1949.

The local union to which Lundy and the others belonged, was an affiliate of the National CIO. The Board had certified it as the bargaining representative of the employees of respondent and the parties having failed to reach an agreement on certain demands, a strike was called on the date stated, which naturally was one of the busiest times for a bus terminal. Respondent promptly, on December 26th, notified all strikers by telegram that unless they returned to their jobs by the following evening, their places would be filled "with permanent replacements". The notice was ignored and all places were filled, that of Betty Lundy for only one day, December 28th. On January 10, 1950, the union wrote respondent as follows:

"This letter will constitute an offer made through the Transport Workers Union of America for the return of all strikers at the Terminal to their jobs without condition.

"All striking employees, thirty in number, are now ready and willing to return to work and by this means make application for reinstatement. This is a continuing offer in the event it is not immediately accepted."

The position formerly held by Betty Lundy had not again been filled when this letter was written; and on January 9th, the day before its writing, and again on February 6th following, the local union filed a charge with the Board, charging respondent with unfair labor practices by refusing to bargain with it. The first amendment charged that the employer had refused to re-employ the striking employees. Hearings were had and the examiner found against respondent. The latter challenged the right of the union to represent its employees because at the time of the representation proceedings in November, 1949, the officers of the parent organization, National CIO, with which it was affiliated, had not made the Non-Communist affidavits

required by Section 9(h) of the statute, 29 U.S.C.A. § 159(h).

The Board's decision was not made until November 30, 1951, after the Supreme Court in N. L. R. B. v. Highland Park Manufacturing Company, 341 U.S. 322, 71 S.Ct. 758, 95 L.Ed. 969, had decided this question against local unions. It, the Board, therefore concluded that although the refusal to bargain was proven and the findings of fact by the examiner were correct, the respondent was justified in refusing to bargain with the union and the matter had to be treated as an economic strike, entitling the strikers to reinstatement "only if their jobs had not been filled". It further found that all places had been so filled as of January 10th, the date of the letter by the union. Thereafter, upon further consideration of the proceedings before it, the Board discovered that Lundy's place had again become vacant by January 10th, and accordingly issued another order finding that the failure to reinstate her violated Section 8(a), (3), and (1) of the Act and directed that she be restored "without prejudice to her seniority or other rights and privileges", and requiring respondent to post "appropriate notices".

Counsel for the Board, in brief asserts there are only two issues, (1) whether respondent violated Section 8(a), (3), and (1) by refusing to reinstate Betty Lundy, and (2) whether the Board's order is valid, which is substantially the same as number one. On the other hand the respondent raises some ten separate points, the details of which are not necessary to recite in view of the conclusion which we have reached with respect to the Board's power in this proceeding. The first question is one of power to do anything more than dismiss the proceeding, in the light of the holding of the Supreme Court in N. L. R. B. v. Highland Park Manufacturing Company, supra, and N. L. R. B. v. Postex Cotton Mills, 181 F.2d 919 by this Court, holding that the "Board could not proceed against an employer at the instance of a union affiliated with CIO when the officers of CIO had not filed Non-Communist affidavits required by" the statute. There is no doubt that the present proceeding was instituted by the local union, as such, under the certificate of the Board, at a time when, in view of these decisions the union was barred from doing so. All hearings and evidence taken thereon were under and in connection with that charge. The necessary effect of the decisions cited, was that what had been done by the Board itself was without authority, and void by express terms of the statute. The offer to return was made by this same unqualified union as such, not by the individual employees. It is true that it has been held the employees, whether they have struck with or without the aid of a union, may return and the employer is bound to take them back, provided their places have not been filled, on pain of committing an unfair labor practice, and they may authorize anyone to represent them in making such application for reinstatement, still, in this case the only application for reinstatement being by the union on behalf of some 30 employees out of a total of 45, the same was without effect. There is no evidence to support the contention that any employee ever individually authorized the union to act in any capacity other than under the illegal certificate of the Board. As a matter of fact, the first complaint to the Board was by the Union, and filed on January 9, 1950, the day before its offer by letter "for return of all strikers * * * to their jobs without condition" was made. It was undoubtedly based upon the employer's notice to the strikers of December 26th preceding, that if they did not return by the evening of December 27, 1949, their places would be filled. Whether the union knew at that time those places had been filled or not does not appear.

There is certainly no evidence that Betty Lundy ever personally made application to be restored to her former position, or that she authorized the union to do so outside of its action under the certificate from the Board. No other complaint was ever made to the Board and

its subsequent reversal of the order dismissing the complaint on the strength of the decision by the Supreme Court in N. L. R. B. v. Highland Park Manufacturing Company, was based entirely upon its discovery that the individual selected to fill Lundy's place had worked only one day and it had not been refilled when the letter of January 10th was written by the union.

Our conclusion is that the Board should not have entertained the charge filed by the union, and, in so far as Betty Lundy was concerned, it never had any complaint before it at all. In other words, the order of dismissal should have been allowed to stand.

Enforcement is therefore

Denied.

RUSSELL, Circuit Judge (specially concurring).

I agree that the order of the Board should not be enforced, but my reasons for this conclusion are different from my colleagues.

The turning point in the case is the finding of the Board that Betty Lundy applied for reinstatement, or reemployment, which was refused. The Board based its finding that the refusal was discriminatory upon the fact that the employer did not reply to the Union's letter of January 10th, together with its finding that this letter constituted an unconditional offer of Mrs. Lundy to return to work. Conceding for the sake of argument that the Union was empowered to act on behalf of the employees, still the letter can not, under the circumstances here, be said to be an unconditional offer of return to work of Mrs. Lundy. The majority opinion does not quote the entire letter and it is set forth in the margin.[1] While it uses the language "without condition", it is apparent from the tenor of the letter as a whole, as well as the circumstances under which it was presented, that it was merely a legal maneuver and that further proceedings were contingent upon such subsequent action as the group might take, that is, as stated, "that the group may meet promptly to take appropriate action." At this time a strike had already been called and picket lines were in progress around the employer's bus terminal, as had been true for 15 days. The letter was delivered during the course of bargaining negotiations, during the course of which the Union representatives had expressly stated they were representing only the employees on strike, and not the approximately 12 employees who had stayed on the job. At the time the positions of each of the strikers had been filled and were then filled with permanent replacements, save only as to that of Mrs. Lundy. In her case, a replacement had been engaged but had discontinued work. She never at any time indicated any availability or willingness to return.

Under all of the circumstances, it is entirely illogical to construe the letter of January 10th as an unconditional offer to return to work by her and inherently unfair to the employer to penalize it for

---

[1]
"January 10, 1950
"Mr. A. J. Emory, President
"Union Bus Terminal of Dallas, Inc.
"1500 Jackson Street
"Dallas, Texas
"Dear Sir:
 "This letter will constitute an offer made through the Transport Workers Union of America for the return of all strikers at the Terminal to their jobs without condition.
 "All striking employees, thirty in number, are now ready and willing to return to work, and by this means make application for reinstatement. This is a continuing offer in the event it is not immediately accepted.

"Please inform us in writing of the place and manner in which these striking employees should report for duty. We would appreciate and request a reply at your earliest convenience, and if possible by Wednesday noon, January 11th, so that the group may meet promptly to take appropriate action.
 "A copy of this communication is being mailed to the 16th Region of the National Labor Relations Board.
 "Very truly yours,
 "Transport Workers Union
Of America
 "By: A. R. Hardesty,
 "Representative."

failing to segregate from the total of thirty employees the one position which had been filled, but was then temporarily available, or to impute to it discrimination resulting from its failure to "hunt up Mrs. Lundy and advise her that she could return to work." In my opinion, this was not required in this case and there is no basis for the sanctions which the Board seeks to impose upon the employer.