## NATIONAL LABOR RELATIONS BOARD

v.

## VULCAN FURNITURE MFG. CORP.

### No. 14670.

United States Court of Appeals
Fifth Circuit.

July 7, 1954.

Arnold Ordman, Atty., A. Norman Somers, Asst. Gen. Counsel, David P. Findling, Associate Gen. Counsel, George J. Bott, Gen. Counsel, Elizabeth W. Weston, Lewis C. Green, John C. Rohrbaugh, Attys., N.L.R.B., Washington, D. C., for petitioner.

Jess G. Schiffmann, Baltimore, Md., Wilbur G. Silberman, Louis Silberman, Birmingham, Ala., Silberman & Silberman, Birmingham, Ala., of counsel, for respondent.

Before BORAH and RUSSELL, Circuit Judges, and DAWKINS, District Judge.

RUSSELL, Circuit Judge.

The National Labor Relations Board seeks enforcement of its order finding the respondent, Vulcan Furniture Manufacturing Corporation, guilty of an unfair labor practice by its refusal to bargain with the United Furniture Workers of America, C. I. O., herein called the union, as the duly elected and certified representative of respondent's employees. There is no real question that there was a refusal to bargain. Such refusal and

the present proceedings were the only means available to secure review here of respondent's contentions that the Board improperly certified the union as bargaining representative. N. L. R. B. v. Huntsville Manufacturing Co., 5 Cir., 203 F.2d 430; Timken-Detroit Axle Co. v. N. L. R. B., 6 Cir., 197 F.2d 512.

Following the filing, on May 7th, 1951, by the union of a petition for certification as the bargaining representative of the respondent's employees, a hearing was held before a Board agent designated by the Regional Director. At the hearing the respondent moved that the petition be dismissed or held in abeyance pending further investigation as to the Communist affiliation of certain officers of the union. The hearing officer referred this motion to the Board and the Board overruled the motion and directed that an election be held, which was done on September 25th, 1951. Following the election the talley of ballots showed 25 eligible voters, 12 votes cast for the union, 9 against it and 3 "void" ballots. These latter were blank ballots which were cast by eligible voters. Respondent filed objections to the talley and, allegedly at the request of the Regional Director, also submitted an affidavit by one George Watson, an employee, for the purpose of showing that at least two of the blank ballots were the result of intimidation and coercion by the union. These objections were recommended to be dismissed in a report by the Regional Director, which stated that an investigation had been made by an agent of the Board on the issue of coercion and, while referring to the Watson affidavit and other matters, stated that nothing discovered constituted evidence supporting the allegation that the union had engaged in any activity tending to restrain or coerce employees. This report concluded that the objections raised no "material or substantial issue with respect to the result of the election" and recommended that the Board certify the union on the basis of the majority of valid votes cast for it in the election.

Respondent insists that the Board erred in ruling that the union was in compliance with the provisions of section 9(h) of the Act[1] and in refusing to receive proffered evidence in support of respondent's contention that it was not in compliance. Respondent does not contend that the jurisdiction of the Board depended upon an affirmative showing that the union was in compliance. It contends, however, that upon its assertion that the union was not in actual compliance, the Board was required either to suspend the representation proceeding until an investigation of the charge should be made by the Board or to permit respondent to establish its allegations of non-compliance by proof. There is no contention that the nominal officers of the union have not filed the required non-Communist affidavits, but respondent urges that an investigation would disclose, or, given an opportunity to do so, it would prove that such affidavits are false or that some of the officers of the union, though not named as such or known to the Board as such, are members of the Communist Party, or are affiliated with it, and have not been required to file affidavits. In rejecting

---

1. Section 9(h) of the National Labor Relations Act, as amended, 29 U.S.C.A. § 159(h) : "No investigation shall be made by the Board of any question affecting commerce concerning the representation of employees, raised by a labor organization under subsection (c) of this section, and no complaint shall be issued pursuant to a charge made by a labor organization under subsection (b) of section 160 of this title, unless there is on file with the Board an affidavit executed contemporaneously or within the preceding twelve-month period by each officer of such labor organization and the officers of any national or international labor organization of which it is an affiliate or constituent unit that he is not a member of the Communist Party or affiliated with such party, and that he does not believe in, and is not a member of or supports any organization that believes in or teaches, the overthrow of the United States Government by force or by any illegal or unconstitutional methods. The provisions of sections 286, 287, 1001, 1022, and 1023 of Title 18 shall be applicable in respect to such affidavits."

these contentions the Board held that the fact of compliance by a labor organization is a matter for administrative determination and is not litigable by the parties.

As was recently observed by the Court of Appeals for the Sixth Circuit, N. L. R. B. v. Sharples Chemicals, Inc., 209 F. 2d 645, 650, there is no provision in the Act as to how or by whom the question of compliance is to be determined. In Farmer v. United Electrical, Radio and Machine Workers, 211 F.2d 36, the Court of Appeals for the District of Columbia held that the Board is without authority to inquire into the truth or falsity of the affidavits and affirmed a judgment of the district court enjoining an effort to make such an investigation. In the Sharples Chemicals case the court expressed some doubt as to the correctness of this decision, but held that in any event a respondent in an unfair labor practice proceeding is not permitted to raise and litigate in that proceeding the question of compliance on the part of the charging union.

■ We likewise doubt the correctness of a ruling which forbids the Board to determine whether the affidavit requirements of the Act, a *sine qua non* for the exercise of the Board's powers,[2] have truly been complied with, that is, a ruling which forbids it to ascertain and determine whether what in form is an affidavit is merely a paper evidencing false swearing. It would seem that the Congress, having committed to the Board the broad powers of administration of the Act, and yet restricted the exercise of them in those instances only where the required affidavits have been filed, must necessarily have intended that the Board should be obligated to determine whether what purports to be an affidavit is one in fact and whether it truly discloses the non-

Communist status of the union officers, but this exact question is not before us, and regardless of what views we might entertain on it, the courts of the District of Columbia, the sole venue of prohibitory suits against the Board, have ruled otherwise. In this venue situation the denial of certiorari by the Supreme Court in the Farmer case, 347 U.S. 943, 74 S.Ct. 638, may be entitled to more weight than is usually accorded such judgments. But the question before us presents a different situation and it is not answered by the statement that the Board may not initiate an inquiry into such matters even though it might appear clear that some method of testing the validity of such affidavits should be present, If no means for this exists it is a question for the Congress and not for the courts. Upon the point before us, assuming the fact that formal compliance with the statute exists, that is, that the required affidavits are filed with the Board, we find no proper basis in the Act for implication that a party in a proceeding before the Board may question the truthfulness of the affidavits or whether the ostensible officers filing them are the true directors of the union involved. As we have indicated, if such power of ascertainment exists anywhere, it is with the Board. We are clear that Congress did not intend that each of the numerous proceedings instituted by the Board upon complaints of violation of the statute against parties throughout the nation should be delayed and determined on a case-to-case basis with all the attendant opportunities for delay in the functioning of the processes of the Act. We find no authority in the statute supporting the view that the truthfulness or completeness of the affidavits may be challenged in a defense to proceedings conducted by the Board,[3] though of course a different situation prevails where there

---

2. N. L. R. B. v. Highland Park Mfg. Co., 341 U.S. 322, 71 S.Ct. 758, 95 L.Ed. 969; N. L. R. B. v. Postex Cotton Mills, 5 Cir., 181 F.2d 919.

3. If the employer were permitted to litigate the truth or falsity of the non-Communist affidavits required by section 9(h)

on a case-to-case basis, by the same token he would be permitted to litigate in the same manner the truth or falsity of the financial statements and other documents required to be filed by sections 9(f) and 9(g) or require proof in each case that every member of the petitioning union

has been no ostensible compliance. This is true even though in the present judicial climate of Farmer, supra, the Board may not be able to administratively determine such questions. That doubt may exist as to the power of the Board in such instances would not justify our attempting to approve a substitute procedure which is not within the intent of the statute. The objection of the respondent was properly overruled.

■ Respondent urges that the Board erred in considering the three blank ballots void and in failing to count them as votes against the union in determining whether it polled a majority of the votes cast. 29 U.S.C.A. § 159(a). Obviously, an unmarked or otherwise noncommittal ballot is not a vote; therefore, since it is generally the votes and not the number of ballots which decide an election, clearly there is no merit to this argument. In N. L. R. B. v. Whittier Mills, 5 Cir., 111 F.2d 474, we held that a majority of the votes cast in an election was sufficient for the selection of a bargaining representative and that employees who could have voted but declined to do so would be considered as having assented to the will of the majority of those who did vote. This rule is applicable here where eligible voters went to the polls but, by casting blank ballots, declined to indicate their preference and, in effect, waived their right to vote for or against the union. The Board has long adhered to this rule[4] and we approve it as a reasonable one. The following statement from Semi-Steel Casting Co. of St. Louis v. N. L. R. B., 8 Cir., 160 F.2d 388, 392, certiorari denied 332 U.S. 758, 68 S.Ct. 57, 92 L.Ed. 344, is appropriate here:

"It is not unreasonable to say that the employee whose vote was marked both for and against the union did not participate in the election. So far as can be ascertained from his ballot, he attended the polls merely to express his indifference to the result."

■ It is further contended that the Watson affidavit made out a prima facie case of coercion on the part of the union and under section 102.61 of the rules and regulations of the Board and the ruling of this court in N. L. R. B. v. Sidran, 5 Cir., 181 F.2d 671, respondent was entitled to a hearing on this issue. Alternatively, respondent contends that even without a hearing the evidence contained in the record sustains its claim of coercion and requires that a new election be ordered. We do not agree. While it is true that Watson stated in the affidavit that he and a second employee, Lewis, cast blank ballots in an effort to "fool" the union and that they were afraid to vote against the union although they wanted to "vote for the Company", the affidavit does not sustain the contention that the union was responsible for Watson's apprehension. Watson said that after respondent's manager had made a speech to the employees with regard to the coming representation election, a pro-union employee who had previously asked him to vote for the union approached him and, in what Watson thought was a threatening tone, asked him how he was going to vote and whether the speech had frightened him. When Watson replied that he was going to vote for the majority, meaning for the union, the other employee retorted, "O. K., don't let him scare you." According to the affidavit, this conversation led Watson to believe that the union would "do something" to him if he did not vote for it. Our consideration of the record leads us to the conclusion that a prima facie case has not been made out and that the Board was not required to grant a hearing on this objection. Moreover, even if it were established that Watson and Lewis were improperly influenced by pro-union em-

---

has been furnished with a copy of the financial statement.

4. Interlake Iron Corporation, 4 N.L.R.B. 55, 61–62; Sorg Paper Company, 9 N.L. R.B. 136, 137; American Tobacco Co.,

10 N.L.R.B. 1171, 1172; Jabez Burns & Sons, Inc., 72 N.L.R.B. 18, 19; Q-F Wholesalers, Inc., 87 N.L.R.B. 1085, 1088.

ployees this would not change the result of the election since the union would still have a majority if those two ballots were counted as votes against it.

The objections of respondent are overruled and the petition for enforcement is granted.

Enforced.