NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

PUERTO RICO FOOD PRODUCTS COR-
PORATION, Respondent.

No. 4984.

United States Court of Appeals
First Circuit.

April 26, 1956.

Rehearing Denied June 13, 1956.

**516**

George L. Weasler, Field Atty., N. L. R. B., San Juan, P. R., with whom Theophil C. Kammholtz, Gen. Counsel, David P. Findling, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Frederick U. Reel and William J. Avrutis, Attys., N. L. R. B., Washington, D. C., were on the brief, for petitioner.

Jaime Pieras, Jr., San Juan, P. R., for respondent.

Before MAGRUDER, Chief Judge, and BIGGS and WOODBURY, Circuit Judges.

WOODBURY, Circuit Judge.

This is a petition by the National Labor Relations Board under § 10(e) of the Labor Management Relations Act, 1947, 61 Stat. 147, 148, 29 U.S.C.A. § 160(e), for enforcement of an order entered by it under § 10(c) of the Act against the respondent, a Puerto Rican corporation, engaged in the business of canning local fruits and vegetables which it sells in substantial part in continental United States. All facts essential both to the Board's jurisdiction and to ours are stipulated.

On February 15, 1953, 36 of approximately 50 employees at the respondent's plant in Rio Piedras signed cards authorizing the "Union Industrial Amalgamada Num. 1" to act as their collective bargaining representative. And on February 27, eleven days later, a union calling itself "Union Amalgamada Num. 1" filed a petition with the Board for certification as the collective bargaining representative of the respondent's maintenance and production employees. When that petition came on for hearing

on March 16 the union moved to amend its petition to show its correct name to be "Union Industrial Amalgamada #1, Independiente," and the Board in its decision and direction of election issued on June 15 allowed the motion because it said it was "satisfied that Union Amalgamada #1 and Union Industrial Amalgamada #1, Independiente are one and the same labor organization."

That petition for certification, however, was withdrawn by permission of the Board after the instant proceeding was initiated by a charge of unfair labor practices filed with the Board by "Union Industrial Amalgamada Num. 1." A complaint issued on this charge alleging unfair labor practices by the respondent by interfering with, restraining, and coercing its employees in the exercise of their rights under § 7 of the Act, 29 U.S. C.A. § 157, by discriminatorily discharging 17 employees for their pro-union activities and by refusing to bargain collectively with the charging Union as the representative of an appropriate employee unit. The respondent answered denying the allegations of unfair labor practices and in addition pleaded as a special defense that the charging Union was not in compliance with § 9(f), (g), and (h) of the Act, 29 U.S.C.A. § 159 (f–h).[1]

Usual proceedings followed and after a hearing in due course the trial examiner filed his intermediate report. In that report he found that the "union herein," which he called "Union Industrial Amalgamada #1," was a labor organization within the meaning of § 2(5) of the Act, 29 U.S.C.A. § 152(5), that it was the exclusive representative for the purpose of collective bargaining of an appropriate unit of the respondent's employees, and that its three charges of unfair labor practices were sustained by the evidence introduced at the hearing. Furthermore the trial examiner ruled that the respondent's special defense on the ground of the Union's non-compliance

---

[1]. Another special defense grounded on an alleged settlement of the case with local officers of the Board has been considered only to be rejected as too lacking in merit to warrant discussion.

with the provisions of § 9(f), (g), and (h) of the Act presented an issue of fact for administrative determination which was "not litigable by the parties." To this, however, he added that he had "administratively satisfied" himself that at all material times the Union was in fact in compliance with the above sections of the Act.

The Board reviewed the trial examiner's rulings and, finding that no prejudicial error had been committed, affirmed them all. It also adopted the trial examiner's findings, conclusions, and recommendations, except those with respect to the respondent's refusal to bargain, which it rejected on the ground that the General Counsel had not proved that the Union represented an uncoerced majority of the respondent's employees in the unit involved. On the basis of these findings and conclusions the Board issued an appropriate cease and desist order in the usual form and with the usual provisions for affirmative action. This is the order which the Board asks us to enforce.

On the merits, the Board's petition for enforcement presents the routine situation of a charge of unfair labor practices on the part of the respondent supported by evidence introduced by counsel for the General Counsel at a hearing before a trial examiner, countered by a denial of those charges by the respondent also supported by evidence. No useful purpose would be served by a detailed analysis of the conflicting testimony and exhibits. It will suffice to say that although either the trial examiner or the Board might have resolved the factual issues in favor of the respondent, a careful consideration of the record as a whole discloses substantial evidentiary support for the findings and conclusions of unfair labor practices reached by the Board.

The substantial question in this case is the correctness of the trial examiner's ruling, affirmed by the Board, that the respondent's special defense grounded on non-compliance by the Union with the requirements of § 9(f), (g), and (h) presented an issue of fact solely for administrative determination which was not litigable by the parties.

In N. L. R. B. v. Highland Park Mfg. Co., 1951, 341 U.S. 322, 71 S.Ct. 758, 760, 95 L.Ed. 969, the Supreme Court held, contrary to the contention of the Board, that a respondent in an unfair labor practice proceeding was entitled to litigate the scope of § 9(h), specifically the question whether the C.I.O. was a "national or international labor organization" within the meaning of the section. The Court summarized its conclusion in the final paragraph of its opinion by saying:

"It would be strange indeed if the courts were compelled to enforce without inquiry an order which could only result from proceedings that, under the admitted facts, the Board was forbidden to conduct. The Board is a statutory agency, and, when it is forbidden to investigate or entertain complaints in certain circumstances, its final order could hardly be valid. We think the contention is without merit and that an issue of law of this kind, which goes to the heart of the validity of the proceedings on which the order is based, is open to inquiry by the courts when they are asked to lend their enforcement powers to an administrative tribunal."

But, in the paragraph preceding the above, the Court took pains to point out that no issue of fact was presented in the case it was considering.

It said:

"If there were dispute as to whether the C.I.O. had filed the required affidavits or whether documents filed met the statutory requirements and the Board had resolved that question in favor of the labor organizations, a different question would be presented. But here there is no question of fact."

These last quoted sentences led this court in N. L. R. B. v. Rozelle Shoe Corp., 1 Cir., 1953, 205 F.2d 447, 448, 449 to say in a dictum that it saw nothing in the Highland Park case standing in the way of its agreement with a number of cases

cited from other circuits,[2] holding that the Board was not required to establish as part of its affirmative case that at all relevant times the charging union was in fact in compliance with § 9(f), (g), and (h) of the Act. In common with a number of other circuits, we felt that while the Highland Park case stood squarely for the proposition that the *necessity* for compliance with § 9(f), (g), and (h) was litigable in an unfair labor practice proceeding, it indicated that the *fact* of compliance was not, or at least left that question open. The decision of the Supreme Court handed down on February 27 last, in N. L. R. B. v. Coca-Cola Bottling Co. of Louisville, Inc., 350 U.S. 264, 76 S.Ct. 383, however, causes us to change our view.

The Coca-Cola Bottling Co. of Louisville, Inc., as a respondent in an unfair labor practice proceeding, had offered to prove by evidence of duties and functions that one Taylor, the regional director for Kentucky of the charging union's labor federation, who admittedly had not filed a non-communist affidavit, was a union "officer" within the meaning of § 9(h). The Board rejected this offer of proof on two grounds. Its first ground was the broad one that the compliance status of a union was a matter for administrative determination and not for litigation in complaint or representation proceedings. Its second, and narrower, ground was that the respondent's proof, if accepted, would not sustain its contention, for its proof would only show Taylor's functions whereas the Board's test for determining who were union "officers" in the § 9(h) sense was not duties or functions but whether the individual concerned occupied a position identified as an office in the constitution of his labor organization.

The Court of Appeals for the Sixth Circuit in enforcement proceedings, 219 F.2d 441, did not pass on the unfair labor practices charged, but remanded to the Board for determination of the issue tendered by the respondent. That is to say, the court ruled, contrary to the Board's contention, that under the rule of the Highland Park case the respondent was entitled to litigate the compliance issue it had raised, and that the Board's "constitutional" test was not the correct one to apply but that who are union "officers" is to be determined by what they do, not by their titles.

The Supreme Court granted certiorari because of the importance of the questions raised in the administration of the Act. And although the Court [350 U.S. 264, 76 S.Ct. 385] said its specific concern was "with the appropriate construction of 'officers' in § 9(h)," obviously a question, as in the Highland Park case, of the meaning of statutory language, it nevertheless stated the questions for its consideration, both of which it answered in the affirmative, as follows:

"(1) May an employer, during the course of an unfair labor practice hearing, show that a labor organization has not complied with § 9(h) and thereby establish the Board's want of jurisdiction? (2) Assuming the answer to this question is 'yes,' is the Board's construction of 'officer' in § 9(h)—viz., 'any person occupying a position identified as an office in the constitution of the labor organization'—proper?"

The Court stated the first question for its consideration more broadly than the exigencies of the case required in that it did not limit the question to the *necessity* for compliance, a matter of statutory construction, and hence a matter of law, but stated it broadly enough to embrace within its scope the *fact* of compliance as well. We think this breadth of statement is significant in itself, and that it is particularly significant in view of the Court's discussion of the question. For, after summarizing the proceedings in the Highland Park case, the Court said:

**2.** To these there might now be added N. L. R. B. v. Sharples Chemicals, Inc., 6 Cir., 1954, 209 F.2d 645, and two cases from the Seventh Circuit, American Rubber Prod. Corp. v. N. L. R. B., 1954, 214 F.2d 47, 55 and Goodman Mfg. Co. v. N. L. R. B., 7 Cir., 1955, 227 F.2d 465.

"The Board distinguishes Highland Park, by suggesting that here the 'employer seeks to question only the *fact* of compliance, as distinguished from the *necessity* of compliance.' The genesis of this distinction comes from the following in Highland Park: 'If there were dispute as to whether the C.I.O. had filed the required affidavits or whether documents filed met the statutory requirements and the Board had resolved that question in favor of the labor organizations, a different question would be presented.' 341 U.S. 322, 325, 71 S.Ct. 758, 760. The Board misconceives the significance of the passage. Both Highland Park and this case involve the scope of § 9(h), the meaning to be derived from its language; neither case involves an inquiry into disputed facts, the situation referred to in Highland Park. Acceptance of a differentiation between these cases upon any such theory as that suggested by the Board would make of law too thin a dialectic enterprise.

"But if the Board's distinction is overly subtle, its reason for attempting a distinction has force, namely, a concern with 'the need to expedite the hearing of cases and the resolution of issues on their merits. * * * ' 108 N. L. R. B. 490, 491. Much may be said for the claim that an employer should not be permitted to disrupt or delay complaint or representation cases by raising questions respecting § 9(h). But after Highland Park the argument comes too late."

The Coca-Cola Bottling Co. case is not to be read as definitely holding that the *fact* of compliance, like the *necessity* for compliance, is litigable in an unfair labor practice proceeding. The holding of the case, so far as the question we are considering is concerned, is the same as the holding in the Highland Park case. It is only that the question of the meaning to be drawn from the language of § 9(h), as a question of law, is litigable in a proceeding to remedy an unfair labor practice. But the Court said a good deal more in the Coca-Cola Bottling Co. case than simply that it was re-affirming a rule announced a few years before in the Highland Park case. We do not think it likely that the Court would speak as broadly as it did by inadvertence; we must assume that it spoke broadly by design.

Perhaps we are reading more into the Coca-Cola Bottling Co., opinion than the Court intended to say. Nevertheless we think the Court's language in that case, and its method in handling the question presented, indicates that no distinction ought to be drawn between the *fact* of compliance and the *necessity* of compliance, with the result that both are litigable in enforcement proceedings.

Indeed the fact of compliance and the necessity for compliance are closely interwoven. For unless the Board voluntarily chooses to disclose what union functionaries have complied with the requirement of § 9(h), as it evidently did in the Highland Park and Coca-Cola Bottling Co. cases, it holds in its hands the power to defeat a respondent's established right to litigate the *necessity* for compliance simply by refusing to disclose the names of those who have filed non-communist affidavits.

A rule requiring the Board to disclose the facts as to compliance imposes no great burden on it for no doubt in the vast majority of cases proof of compliance can readily be supplied by a statement under oath of the person on the Board's staff in charge of compliance matters who, no doubt, must already have checked the charging union's compliance. Really all the rule we now announce requires is that the Board lay its cards face up on the table by disclosing what documents are on file and who filed them, for we are by no means intimating that a respondent in an unfair labor practice proceeding can litigate anything more than compliance with the filing requirements of § 9(f), (g), and (h). We do not suggest for a moment that in a proceeding such as this inquiry may be made as to the truth of the affidavits and the factual accuracy

**520**

of the reports required to be filed with the Board. Nor do we suggest that the sufficiency as to form of the documents required to be filed under § 9(f) and (g) is litigable for that matter is committed by the statute to the Secretary of Labor.

■■ In summary then we conclude that it is incumbent upon the Board, at least when properly challenged, to come forward with evidence of compliance with the filing requirements of § 9(f), (g), and (h) and to give the respondent a chance to refute that evidence if it can. Since the Board in this case did not do what we now think the statute requires of it, we shall not issue a decree enforcing its order.

■ It seems possible, however, that the respondent's claim of non-compliance does not rest upon substantive grounds but on the variations in the names used to describe what in all probability is a single labor organization. In view of the possibility that really only one labor organization is involved and that it, whatever its exact name may be, has in fact complied with the filing requirements of § 9(f), (g), and (h), we shall retain our jurisdiction while we remand to the Board to give it an opportunity to supplement the record. On the filing of a supplemental record in this court we shall enter an appropriate decree.