ALLEN, APPELLANT, *v.* THE NEW YORK CENTRAL RAILROAD CO., APPELLEE.

(No. 5330—Decided January 23, 1961.)

*Mr. Richard H. Conn,* for appellant.
*Messrs. Doyle, Lewis & Warner,* for appellee.

DEEDS, J. This is an appeal on questions of law from a judgment of the Court of Common Pleas, entered on the pleadings.

The appellant will be referred to herein as the plaintiff and the appellee as the defendant, as the parties appeared in the trial court.

Plaintiff commenced the action against the defendant to recover damages for alleged wrongful discharge from employment and breach of an employment contract.

Plaintiff's petition alleges, in part, that defendant is a railroad corporation, engaged as a common carrier in the business of transporting freight and passengers; that on or about April 1917, plaintiff and defendant entered into a contract of employment whereby plaintiff was employed as a fireman; that during 1920 plaintiff qualified as a locomotive engineer; that in 1940 defendant first assigned plaintiff to a position as locomotive engineer; that during the course of plaintiff's employment certain collective bargaining agreements were concluded between defendant and certain labor organizations; that said agreements were by virtue of the Railway Labor Act of the United States (Title 45, U. S. Code, Chapter 8), "duly designated" to represent employees of defendant, such as plaintiff; that such agreements were entered into for the benefit of defendant's employees and were incorporated into and made a part of each employee's employment contract; and that plaintiff became entitled to the rights, privileges and benefits of the provisions of those agreements.

Plaintiff alleges further that on October 1, 1937, defendant entered into such a collective bargaining agreement with the Grand Brotherhood of Locomotive Engineers, which was the labor organization then duly designated to represent such employees in accordance with the requirements of the Railway Labor Act; that said agreement was with respect to its division known as "Line West of Buffalo" and employees such as plaintiff; that such collective bargaining agreement, among other provisions, provided that "(a) The general committee of adjustment of the Brotherhood of Locomotive Engineers will represent all locomotive engineers in the making of contracts, rules, rates and working conditions and interpretations thereof."; and that, as of September 10, 1954, plaintiff held a relatively high

position of seniority as a locomotive engineer, which seniority assured plaintiff's future employment.

Plaintiff alleges further that, "notwithstanding the fact" that plaintiff had discharged all duties incumbent upon him and fulfilled all conditions on plaintiff's part to be performed, defendant, on September 10, 1954, wrongfully discharged plaintiff from employment with the defendant.

Plaintiff's petition contains a prayer for damages in the amount of $132,500 and costs in the action.

The defendant's amended answer admits the formal allegations of plaintiff's petition and that plaintiff was employed as a locomotive fireman in April 1917, and later promoted to engineer.

Answering further, defendant alleges that plaintiff's employment existed under collective bargaining agreements between defendant and two labor organizations known as Brotherhood of Locomotive Firemen and Enginemen and the Brotherhood of Locomotive Engineers; that such agreements encompassed seniority rights as alleged in plaintiff's petition, but provided nothing with regard to tenure of employment. Answering further, defendant alleges that on May 18, 1951, it entered into an agreement with the Brotherhood of Locomotive Engineers supplementing and becoming a part of the existing agreements.

The amended answer of the defendant contains a complete copy of the supplemental agreement, alleged to have been entered into on May 18, 1951.

We consider it unnecessary to set out the entire provisions of the supplemental agreement in this opinion.

The agreement provides in part, that locomotive engineers who are members of the Brotherhood of Locomotive Engineers are required to comply with the terms of the supplemental agreement and for failure to comply with certain terms and conditions they may be discharged from employment with the railroad. The agreement also provides for notice, hearings on charges and decisions concerning termination of employment.

The pertinent provisions of the supplemental agreement are as follows:

"5. (a) The general chairman of the Brotherhood will notify the employing carrier in writing the identity of any em-

ployee whose employment under the respective agreements between the parties hereto he rquests be terminated by reason of failure to comply with the terms of this agreement. Upon receipt of such notice and request, the carrier will, as promptly as possible but within ten calendar days of such receipt, notify the employee concerned in writing that he is charged with failure to comply with the terms of this agreement. Copy of such notice shall be given to the general chairman of the Brotherhood. Any employee so notified who disputes the fact that he has failed to comply with the terms of this agreement, shall within a period of ten calendar days from the date of such notice, request the carrier in writing to accord him a hearing. Such request shall be honored by the carrier and date set for such hearing as soon as possible, but within ten calendar days of the date of receipt of request therefor. Copy of notice of such hearing shall be given to the general chairman of the Brotherhood. The receipt by the carrier of a request for a hearing shall operate to stay action on the request of the Brotherhood for termination of employment until the hearing and a decision is rendered. In the event the employee concerned fails to request a hearing as provided for herein, unless the carrier and the general chairman of the Brotherhood agree otherwise in writing, the carrier shall proceed to terminate his employment under the respective agreements between the parties hereto at the end of a period of thirty calendar days from receipt of the request from the general chairman of the Brotherhood.

"(b) Based on the evidence at the hearing a decision shall be rendered within 5 calendar days of the hearing date and the employee and the general chairman of the Brotherhood shall be promptly advised thereof. A transcript of the record at such hearing will be made and a copy thereof shall be furnished to the general chairman of the Brotherhood. If the decision is that the employee has not complied with the terms of this agreement, unless the carrier and the general chairman of the Brotherhood agree otherwise in writing, his employment under the respective agreements between the parties hereto shall terminate within ten calendar days of the date of said decision. All appeals shall be taken within nine calendar days of the date of said decision appealed from, and the decision on each appeal shall be rendered within twenty calendar days of the date the

appeal is taken. The appeals shall be final and binding unless within six months thereafter the dispute shall be submitted to a tribunal having jurisdiction thereof."

The second defense of defendant's answer contains the following allegations:

"5. For its second defense defendant incorporates herein, as if fully rewritten, the allegations contained in its first defense and says that plaintiff failed to comply with the terms of the union shop portion of the collective bargaining agreement under which he seeks relief in this action by failing to maintain membership in a labor organization national in scope and organized within the meaning of and in accordance with the Railway Labor Act, 45 U. S. C., Sections 152 and 153, that plaintiff's employment was terminated in accordance with the mandatory requirements of the union shop provisions of the collective bargaining agreement, as hereinbefore set forth."

The third defense of defendant's answer alleges, in substance, that, having notified plaintiff of defendant's intention to terminate plaintiff's employment, plaintiff followed the procedure prescribed in paragraphs 5(a) and (b) of the contract and appealed from the proposed termination to the highest officer of the defendant designated to handle such an appeal; that such officer rendered a decision authorizing and confirming the proposed termination; that subsequent to such decision plaintiff has never submitted the dispute with the defendant to the tribunal having jurisdiction thereof, namely, the National Railroad Adjustment Board, as provided by the Railway Labor Act, Title 45, Sections 152 and 153, U. S. Code, and by paragraph 5(b) of the contract; and that plaintiff is precluded from bringing this action under the laws of Ohio and of the United States.

The pertinent allegations of plaintiff's reply to defendant's amended answer are that the union shop agreement set forth in defendant's amended answer is invalid and ineffective as to plaintiff for the reason that:

"(a) It is a type of agreement specifically forbidden and made unlawful by the Railway Labor Act, Section 2, Fourth (45 U. S. C., Sec. 152, Fourth) and is not authorized by Section 2, Eleventh thereof (45 U. S. C., Sec. 152, Eleventh) because: * * * while yet a member of the B. of L. F. & E., plaintiff joined the United Railroad Operating Crafts, it being 'another organiza-

tion admitting membership to employees of a class or craft in any of said services,' as specifically provided in Section 2 of said agreement, which membership plaintiff maintained continually up to and including the date of his discharge.

"(b) Said agreement was not applicable to plaintiff because membership in the B. of L. E. was not made available to him upon the same terms and conditions generally applicable and membership therein was denied to him for reasons other than the failure to tender the periodic dues, initiation fees and assessments uniformly required as a condition of acquiring or retaining membership.

"(c) Prior to his discharge by defendant, plaintiff tendered himself as ready, willing and able to become a member of the B. of L. E. and performed all conditions precedent on his part to be performed to qualify for said membership.

"(d) Prior to his discharge by defendant, plaintiff was an accepted member of the B. of L. F. & E., being a labor organization, national in scope, organized in accordance with the Railway Labor Act; and further, prior to defendant's first notifying plaintiff of noncompliance with said agreement, plaintiff had applied for membership in said B. of L. F. & E.

"Further, as to the allegations in paragraph five (5) plaintiff alleges that defendant conspired and joined with the B. of L. E. in discrimination against and punishing plaintiff because of his membership in a rival union and for reasons other than plaintiff's failure to tender periodic dues, initiation fees and assessments uniformly required as a condition of acquiring or maintaining membership, discharging him as a result thereof, and that defendant can not justify or defend said discharge of plaintiff by reliance in any way upon said agreement, because such use of such agreements is arbitrary, capricious and in bad faith and is not proper, authorized or permitted under Section 2, Eleventh of the Railway Labor Act."

Section two of the supplemental agreement, contained in defendant's amended answer and as referred to in plaintiff's reply, provides:

"2. The requirement of membership in the Brotherhood provided for herein shall not be applicable to present or future employees in engine train, yard or hostling service, who maintain membership in any one of the other labor organizations,

national in scope, organized in accordance with the Railway Labor Act, and admitting to membership employees engaged in any of such services, provided, that nothing contained in this agreement shall prevent an employee from changing membership from one organization to another organization admitting membership to employees of a class or craft in any of said services.''

Plaintiff admits in reply to defendant's amended answer that plaintiff did not submit the dispute to the National Railway Adjustment Board.

Plaintiff has filed assignment of errors as follows:

''Assignment of error that the trial court erred to plaintiff's prejudice in sustaining defendant's motion for judgment upon the pleadings and granting final judgment for defendant.

''A. In general.

''B. Federal law does not require a prior appeal to the adjustment board.

''C. Ohio law does not require prior exhaustion of administrative remedies in this case.

''D. In any event, plaintiff did exhaust the administrative remedies provided in this union shop agreement.

''E. Furthermore, the administrative remedy provisions of this union shop agreement are invalid and unenforcible as to plaintiff.''

Counsel for defendant contend that the judgment of the Common Pleas Court is in accord with the decision of the Supreme Court in *Ladd* v. *New York Central Rd. Co.*, 170 Ohio St., 491.

Paragraph two of the syllabus in the *Ladd case* is as follows:

''An action by an employee of an interstate railroad carrier to recover damages from the carrier for alleged wrongful discharge in violation of an agreement between the carrier and the brotherhood of which such employee is a member, which agreement covers rates of pay, rules and working conditions, and provides for methods of settlement of disputes arising thereunder, must fail as having been prematurely brought, when it is established by the evidence that such employee did not exhaust the administrative remedies provided by such agreement and the Railway Labor Act.''

The controlling and decisive issue is whether plaintiff can maintain a civil action without exhausting the administrative remedies as required by the decision in the *Ladd case, supra,* on the ground that the union shop agreement was not valid and enforceable against the plaintiff.

We are of the opinion that the decision in the *Ladd case* did not authorize or require a judgment to be entered on the pleadings in the case now before this court.

It is our view that the pleadings presented issues of fact requiring evidence for a determination of the cause.

The defendant alleges that plaintiff's employment was terminated for failure to comply with the terms of the union shop agreement, by failing to maintain membership in a labor organization national in scope and organized within the meaning of the Railway Labor Act, Title 45, Sections 152 and 153, U. S. Code, and that plaintiff's employment was terminated in accordance with the union shop agreement.

It is alleged in plaintiff's reply, in substance, that he was a member of a labor organization, other than the organizations which entered into the bargaining agreements with the defendant, and also that acts of the defendant prevented plaintiff from complying with the terms of the union shop agreement. It is our opinion that those allegations present issues of fact requiring evidence for a decision.

The allegations of plaintiff's reply are to the effect that plaintiff's employment with the defendant was terminated contrary to the requirements of the Railway Labor Act and that the agreement relied upon by defendant is unenforceable for the reason that it is not valid as a defense against plaintiff.

It is the contention of the defendant that the decision in the *Ladd case, supra,* required plaintiff to exhaust the administrative remedies available to plaintiff and that the court is without jurisdiction to determine the cause, even though plaintiff makes the claim that the agreement relied upon by the defendant is not valid or enforceable against plaintiff.

It is our view that the decisions of the federal courts interpreting the Railway Labor Act determine that where the invalidity of agreements is involved, the courts do have jurisdiction to hear and determine the cause. *Brotherhood of Railroad Trainmen* v. *Smith*, 251 F. (2d), 282; *Brotherhood of Railroad*

*Trainmen* v. *Howard,* 343 U. S., 768; *National Labor Relations Board* v. *Highland Park Mfg. Co.,* 341 U. S., 322; *Switchmen's Union* v. *National Mediation Board,* 320 U. S., 297; *Steele* v. *Louisville & Nashville Rd. Co.,* 323 U. S., 192; *Graham* v. *Brotherhood of Firemen & Enginemen,* 338 U. S., 232.

We quote a pertinent part of the opinion in *Brotherhood of Railroad Trainmen* v. *Howard, supra* (343 U. S., 768), at page 774:

"Here, as in the *Steele case,* colored workers must look to a judicial remedy to prevent the sacrifice or obliteration of their rights under the Act. For no adequate administrative remedy can be afforded by the National Railroad Adjustment or Mediation Board. The claims here cannot be resolved by interpretation of a bargaining agreement so as to give jurisdiction to the Adjustment Board under our holding in *Slocum* v. *Delaware, L. & W. R. Co.,* 339 U. S., 239. This dispute involves the validity of the contract, not its meaning. Nor does the dispute hinge on the proper craft classification of the porters so as to call for settlement by the National Mediation Board under our holding in *Switchmen's Union* v. *National Mediation Board,* 320 U. S., 297. For the contention here with which we agree is that the racial discrimination practiced is unlawful, whether colored employees are classified as 'train porters,' 'brakemen,' or something else. Our conclusion is that the District Court has jurisdiction and power to issue necessary injunctive orders notwithstanding the provisions of the Norris-LaGuardia Act. We need add nothing to what was said about inapplicability of that Act in the *Steele case* and in *Graham* v. *Brotherhood of Firemen,* 338 U. S., 232, 239-240."

Also, see opinion in *National Labor Relations Board* v. *Highland Park Mfg. Co., supra,* at page 325.

Counsel for the defendant contend that the decision of the Supreme Court in *State, ex rel. Lieux,* v. *Village of Westlake,* 154 Ohio St., 412, requires plaintiff to exhaust the administrative remedies made available by provisions of the Labor Railway Act.

It is our view that the decision of the Supreme Court in the *Westlake case* is not controlling and does not govern a final determination in the case now before this court.

The provisions of the Railway Labor Act specifically pro-

hibit discrimination against railroad employees on account of membership in labor organizations, pursuant to which provisions the federal courts have determined that civil actions may be prosecuted if the validity of a union shop agreement is an issue in the controversy, particularly where the enforcement of the agreement would produce an illegal result. *Brotherhood of Railroad Trainmen* v. *Howard, supra.*

There was no law analogous to the Railway Labor Act in this state and no decision authorizing a civil action without exhausting administrative remedies, applicable in the *Westlake case, supra.*

Neither do we agree that plaintiff is bound by a decision which determines that a labor organization is not national in scope as provided by the Railway Labor Act, if plaintiff was not a party to the litigation, unless it is admitted or made to appear in the record that the labor organization in which plaintiff may prove membership, does not in fact meet the requirements of the Railway Labor Act.

We are not required, on the record before us, and do not determine whether plaintiff can maintain the action if the evidence should disclose that plaintiff was not a member of any organization, national in scope, as provided by the Railway Labor Act. We do, however, have the impression that the status of plaintiff as to his right to prosecute the action would be different if the evidence on the trial should show that acts of the defendant prevented compliance with the terms of the union shop agreement and not that plaintiff voluntarily discontinued membership in any organization national in scope. We are inclined to the view, in the event the evidence should show that plaintiff voluntarily discontinued membership in any organization, that the decision of the United States Supreme Court in *Railway Employes' Department, AFL,* v. *Hanson,* 351 U. S., 225, would have application in a determination of the cause. Also, see *System Federation No. 91, Railway Employes' Department,* AFL-CIO, 364 U. S., 642.

Plaintiff's assignment of error that the trial court erred to plaintiff's prejudice in sustaining defendant's motion for judgment upon the pleadings and granting final judgment for defendant is sustained.

Assignments A, B, C, D and E are determined in accordance with the law as set out in this opinion.

440

For the reasons stated, the judgment of the Common Pleas Court is reversed and the cause remanded for trial or other proceedings according to law.

*Judgment reversed.*

FESS and SMITH, JJ., concur.