OPINION
Appellant Ohio Department of Job and Family Services ("ODJFS") appeals the decision of the Court of Common Pleas, Stark County, which reversed the Unemployment Compensation Review Commission decision finding Claimant-Appellant Patrick J. Vale eligible for unemployment compensation benefits. The relevant facts leading to this appeal are as follows.
On January 31, 2001, Vale filed an application for determination of unemployment benefit rights. ODJFS initially disallowed Vale's application. On March 20, 2001, following Vale's initial administrative appeal, ODJFS transferred jurisdiction to the Review Commission, pursuant to R.C. 4141.28(G). Following a telephone hearing, a hearing officer for the Review Commission issued a decision allowing Vale's application. Pursuant to R.C. 4141.28(N), Appellee Mark Hasch, dba M H Painting, for whom Vale worked, appealed the Review Commission's decision to the Court of Common Pleas. In a judgment entry filed November 5, 2001, the common pleas court reversed the decision of the Review Commission, effectively ruling that Vale worked in the capacity of an independent contractor.
ODJFS filed a notice of appeal therefrom on November 27, 2001, and herein raises the following sole Assignment of Error:
 I. THE COMMON PLEAS COURT ERRED IN REVERSING THE UNEMPLOYMENT COMPENSATION REVIEW COMMISSION'S FINDING THAT CLAIMANT FILED A VALID APPLICATION FOR UNEMPLOYMENT COMPENSATION AS THERE IS COMPETENT, CREDIBLE EVIDENCE IN THE RECORD THAT CLAIMANT PERFORMED SERVICES WHICH WERE SUBJECT TO THE OHIO UNEMPLOYMENT COMPENSATION ACT.
 I
In its sole Assignment of Error, Appellant ODJFS argues that the trial court erred in reversing the Review Commission's finding that Vale was a valid claimant for unemployment compensation purposes. We agree.
Pursuant to R.C. 4141.28, applications for determination of benefit rights and claims for unemployment compensation benefits shall be filed with the ODJFS Director. Among other duties, ODJFS then first determines if the applicant is working in covered employment. It is undisputed in the case sub judice that the pertinent issue herein is the aforesaid initial phase, i.e., the validity of Vale's application for benefits. As a reviewing court, we may reverse an unemployment board determination if it is unlawful, unreasonable, or against the manifest weight of the evidence. Tzangas, Plakas Mannos v. Administrator (1995),73 Ohio St.3d 694, 653 N.E.2d 1207, paragraph one of the syllabus. While appellate courts are not permitted to make factual findings, or to determine the credibility of witnesses, they have the duty to determine whether the board's decision is supported by the evidence in the record.Id. at 696, 653 N.E.2d 1207. The same standard of review is shared by all reviewing courts, from the common pleas court through the Ohio Supreme Court. Id. Therefore, the duty of this court is to review the decision of the Review Commission to determine whether it is unlawful, unreasonable, or against the manifest weight of the evidence. Cardaniv. Olsten Home Health Care (March 22, 1999), Tuscarawas App. No. 1998AP110118, unreported. As a reviewing court, we may neither substitute our judgment for that of the Commission on questions of fact nor reassess the credibility of the witnesses. Kilgore v. Bd. of Rev., Bur. ofUnemp. Comp. (1965), 2 Ohio App.2d 69, 72, 206 N.E.2d 423. It is based upon these standards that we review appellant's sole Assignment of Error.
OAC 4141-3-05, which was relied upon by the commission hearing officer, provides guidance as follows:
 (A) Except as specifically provided in sections 4141.01(B)(2)(k) and 4141.39 of the Revised Code, a worker is in employment when an "employer-employee" relationship exists between the worker and the person for whom the individual performs services and the director determines that:
 (1) The person for whom services are performed has the right to direct or control the performance of such services; and
 (2) Remuneration is received by the worker for services performed.
 (B) As an aid to determining whether there is sufficient direction or control present, the common law rules identify twenty factors or elements. When present, each of these factors serves to indicate some degree of direction or control. The degree of importance of each factor varies depending on the occupation and the factual context in which the services are performed. The twenty factors set forth below are designed only as guides for determining whether sufficient direction or control exists and must be considered in totality:
 (1) The worker is required to comply with the instructions of the person for whom services are being performed, regarding when, where, and how the worker is to perform the services;
 (2) The person for whom services are being performed requires particular training for the worker performing services;
 (3) The services provided are part of the regular business of the person for whom services are being performed;
 (4) The person for whom services are being performed requires that services be provided by a particular worker;
 (5) The person for whom services are being performed hires, supervises or pays the wages of the worker performing services;
 (6) A continuing relationship exists between the person for whom services are being performed and the worker performing services which contemplates continuing or recurring work, even if not full time;
 (7) The person for whom services are being performed requires set hours during which services are to be performed;
 (8) The person for whom services are being performed requires the worker to devote himself or herself full time to the business of the person for whom services are being performed;
 (9) The person for whom services are being performed requires that work be performed on its premises;
 (10) The person for whom services are being performed requires that the worker follow the order of work set by the person for whom services are being performed;
 (11) The person for whom services are being performed requires the worker to make oral or written progress reports;
 (12) The person for whom services are being performed pays the worker on a regular basis such as hourly, weekly or monthly;
 (13) The person for whom services are being performed pays expenses for the worker performing services;
 (14) The person for whom services are being performed furnishes tools, instrumentalities, and other materials for use by the worker in performing services;
 (15) There is a lack of investment by the worker in the facilities used to perform services;
 (16) There is a lack of profit or loss to the worker performing services as a result of the performance of such services;
 (17) The worker performing services is not performing services for a number of persons at the same time;
 (18) The worker performing services does not make such services available to the general public;
 (19) The person for whom services are being performed has a right to discharge the worker performing services;
 (20) The worker performing services has the right to end the relationship with the person for whom services are being performed without incurring liability pursuant to an employment contract or agreement.
 The director shall make a determination, based on the factors listed in this rule, as to whether or not an employment relationship exists for purposes of Chapter 4141. of the Revised Code.
The record reveals that Hasch, dba M H Painting, chiefly performs painting and trimwork for residential homes. At the Review Commission telephone hearing, Vale testified that he worked exclusively for M H during the period from October 1, 1999 through December 31, 2000. He stated that he started at $9.00 per hour, later progressing to $10.00 per hour, doing mostly interior work consisting of "staining and sealing windows, window frames and woodwork." Tr., Review Commission hearing, at 5. He worked with a three- or four-person crew, and recalled that Hasch usually worked with him. The work was generally constant and non-seasonal. He claimed to have set hours of 9 AM to 5 PM, with some Saturday and Sunday work, but no overtime pay on weekends. He was given an IRS 1099 form for tax purposes, but did not file as a self-employed individual; instead, he attached it to his return as if it were a W-2. Tr. at 7. He was further aware at the time that Hasch did not withhold social security or other taxes from his checks. Vale summarized: "* * * I am an employee and I do have * * * certain rights covered by the law that we weren't provided during this employment, is what I'm saying. This is employment, not subcontracting." Tr. at 11.
Hasch also testified to the Review Commissioner, recalling that Vale could come and go at his own discretion, and that "he [Vale] stayed after the rest of us left." Tr. at 13. M H was routinely scheduled to come in to a residence and given two days to complete a painting job. He testified that he did not care how long it took Vale to do the window staining work, "as long as he had the windows done in two days." Tr. at 13. Hasch claimed the decision to pay $10 per hour was based on the concept that it takes about one hour to complete the work on one window. He indicated that Vale provided his own transportation and tools, although sealer and stains were provided to Vale based on the construction contract requirements.[1] He specifically denied Vale's assertion that the hours were set at 9AM to 5PM. Hasch also provided as a witness Heath Boniphant, who worked as a painter on some of M H's jobs. Boniphant, who also was paid by the hour, stated that Hasch directed the crews to show up at a particular house, but the crews chose their own lunch times and could leave early if the job was completed. Tr. at 19.
Having examined the record pursuant to Tzangas, Plakas Mannos,supra, we conclude, in contravention of the trial court's ruling, that the Review Commission's determination was not unlawful, unreasonable, or against the manifest weight of the evidence. Although no individual factor in OAC 4141-3-05 controls, the specific findings of the Review Commission hearing officer that Vale was told to work 9AM to 5PM hours and directed where to report to work were within the province of said finder of fact. On close questions, "[w]here the board might reasonably decide either way, the courts have no authority to upset the board's decision." Irvine v. Unemployment Compensation Board of Review (1985),19 Ohio St.3d 15, 18, citing Charles Livingston Sons, Inc. v.Constance (1961), 116 Ohio App. 437. We hold, upon full review, the trial court erred in reversing and vacating the decision of the Review Commission.
Appellant's sole Assignment of Error is therefore sustained.
For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby reversed, and the decision of the Review Commission is reinstated.
By: WISE, J. FARMER, P.J., and BOGGINS, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is reversed, and the decision of the Review Commission is reinstated.
Costs assessed to Appellee.
[1] The record does not indicate that Vale used any tools or equipment other than brushes.